No. 114,745

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAHIR DIRSHE,
*Appellant*,

v.

CARGILL MEAT SOLUTIONS CORP. and
CHARTIS CASUALTY COMPANY,
*Appellees.*

SYLLABUS BY THE COURT

Under K.S.A. 2015 Supp. 44-510e(a)(2)(E)(i), an employee cannot receive a work-disability award if he or she is fired for cause. For the purpose of applying this statute, to determine whether good cause existed to fire an employee, the proper inquiry is whether the termination was reasonable, given all the circumstances. Considerations include whether the employee made a good-faith effort to maintain his or her employment and whether the employer exercised good faith in the termination. A discharge for cause is not arbitrary, capricious, unjustified, or discriminatory.

Appeal from Workers Compensation Board. Opinion filed October 28, 2016. Affirmed.

*Stanley R. Ausemus*, of Stanley R. Ausemus, Chartered, of Emporia, for appellant.

*D. Shane Bangerter*, of Rebein Bangerter PA, of Dodge City, for appellees.

Before LEBEN, P.J., PIERRON and MCANANY, JJ.

LEBEN, J.: Dahir Dirshe was injured at his job cutting kidneys out of cow carcasses for Cargill Meat Solutions in Dodge City. He applied for workers-compensation benefits.

Ultimately, he contended that he was no longer able to do his job—or any other job for which he was qualified—because of the injury. Based on that, he wanted a specific workers-compensation benefit called a work-disability award, which provides partial compensation for wage loss after an injury. See *Stephen v. Phillips County*, 38 Kan. App. 2d 988, Syl. ¶ 2, 174 P.3d 452, *rev. denied* 286 Kan. 1186 (2008). Called a "permanent partial general disability" award in the statute, K.S.A. 2015 Supp. 44-510e(a), the award is available when an injury isn't a scheduled injury (like the loss of a finger or the use of a shoulder, for which a specific award is provided by statute) and the employee is no longer receiving 90% of his or her prior wage. See K.S.A. 2015 Supp. 44-510e(a); *Stephen*, 38 Kan. App. 2d at 989-92; *Merrill v. Georgia Pacific and Indemnity Insurance Co.*, No. 113,996, 2016 WL 3202663, at *7 (Kan. App. 2016) (unpublished opinion).

For a time, though, Cargill gave Dirshe a position that accommodated his restrictions after the injury—he was assigned to cut the tails off of the carcasses as they moved through the production line, and he was paid 90% of his prior wage to do it. After about 3 months, however, Cargill fired Dirshe from that position because tails were going by Dirshe uncut. Dirshe contended he wasn't able to do the job properly because the equipment was faulty. But an administrative law judge and the Workers Compensation Board both found that he was fired for cause, which made him ineligible under Kansas law for a work-disability award. See K.S.A. 2015 Supp. 44-510e(a)(2)(E)(i) (providing that a wage loss "caused by . . . termination for cause shall in no way be construed to be caused by the injury" and thus does not qualify for a work-disability award).

Dirshe has appealed, contending that he wasn't fired for good reason and, thus, shouldn't be disqualified under K.S.A. 2015 Supp. 44-510e from a work-disability award.

The Kansas Judicial Review Act governs our review of cases arising under the Workers Compensation Act. K.S.A. 2015 Supp. 44-556(a). At a hearing before the Workers Compensation Board, the claimant has the burden of proving his or her right to compensation. *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 137, 343 P.3d 114 (2015). On appeal to this court, the party claiming error has the burden to show it. K.S.A. 2015 Supp. 77-621(a)(1); *Moore*, 51 Kan. App. 2d at 137.

For any factual matters that are in dispute, the Board is the factfinder; we review its factual findings in light of the record as a whole to determine whether they are supported by substantial evidence. K.S.A. 2015 Supp. 77-621(c)(7); *Moore*, 51 Kan. App. 2d at 137. We do not reweigh the evidence or make our own independent review of the facts, but we do determine, after reviewing all of the evidence, whether the evidence supporting the Board's decision has been so undermined by cross-examination or by other evidence that it is insufficient to support the decision. *Moore*, 51 Kan. App. 2d at 137-38. As for any legal issues based on interpretation of the Workers Compensation Act, we must determine those matters independently, without any required deference to the Board's interpretation. See *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 587, 257 P.3d 255 (2011).

With that background, let's consider the evidence. Dirshe originally worked at Cargill cutting kidneys out of cow carcasses; he has no special job skills and has only worked at manual-labor jobs. In addition, Dirshe is Somalian and doesn't read, write, or speak English. As a result of the repetitive trauma associated with his meat-cutting job, Dirshe sustained injuries to both shoulders that were documented by two doctors, as well as injuries to his neck, chest, and upper arms documented by one doctor. Although the injury was the result of repetitive trauma over time, for purposes of his workers-compensation claim, the parties assigned September 5, 2012, as the date of the injury.

After the injury, he filed an application for workers-compensation benefits. He saw the two doctors in January 2013.

Dr. Alexander Neel, a board-certified orthopedic surgeon, was the treating physician provided by Cargill. He diagnosed degenerative disease in both shoulders and a small tear of Dirshe's right rotator cuff. He imposed restrictions of no lifting, pushing, pulling, or carrying anything more than 3 pounds; working only at table height; and not using the hook or knife he had previously used to cut meat.

Dr. Reiff Brown, board certified in disability evaluation, evaluated Dirshe at the request of Dirshe's attorney. Brown diagnosed severe rotator-cuff tendonitis in both shoulders, a possible rotator-cuff tear in both shoulders, acromial impingement (commonly known as swimmer's shoulder) in both shoulders, myofascial-pain syndrome (chronic pain from his shoulders that can show up in other parts of his body), and myositis (muscle inflammation) in the pectoral muscles and his upper arms. Dr. Brown recommended several restrictions on what Dirshe might do in an employment setting. He recommended permanently avoiding work involving frequent reaching of more than 18 inches and to avoid reaching at arm's length above his head on any frequent basis. He also recommended that he not lift anything above his shoulders and that any lifting between the waist and chest be limited to 20 pounds occasionally and 10 pounds if done frequently.

Despite these severe work restrictions, Cargill found a job that Dirshe could still do—cutting off the cow tails with air-powered scissors. Cargill paid Dirshe at least 90% of his prior wage, which meant that he didn't qualify for any benefits to compensate him for a wage loss caused by his injury.

On April 9, 2013, Cargill fired Dirshe. Records documenting the termination contended that Dirshe was intentionally not cutting off the cow tails as they went by, creating unnecessary work for others and a food-safety risk.

In the workers-compensation hearing, Dirshe testified through a translator that the reason he hadn't been cutting off all of the tails was because the scissors would jam. When that happened, he said, he would report the problem to his supervisors, and they would fix it. He said the only reason he hadn't cut off all of the tails was because of the scissor-jamming problem.

Dirshe's supervisor, Daniel Medrano, told a different story. He said the scissor blades are changed every 3 to 5 hours so they don't become dull. He also said that the scissors don't really jam—they just become dull and fail to fully cut the tail off.

Medrano said that he had talked with Dirshe about his job performance many times but that Dirshe would sometimes just let the tails go by uncut. Medrano agreed that at least once Dirshe told him this was because the scissors were dull. Medrano said he had then changed the blades out and found that Dirshe was letting tails go by again an hour later. Medrano and another employee tested the scissors, and both found they were working properly. Medrano reported Dirshe for not doing his job.

Scott Reid, Cargill's human resources manager, testified that Dirshe had had three instances of work-performance difficulties before his injury. According to Reid, those instances (which included problems with safety and job performance, as well as failing to show up for work on the first and last day of each work week) would have been sufficient cause to fire Dirshe, although Cargill didn't at the time. After Medrano reported Dirshe's failure to cut off the cow tails, however, Cargill fired Dirshe.

5

Dirshe has not been employed since then. A vocational-rehabilitation counselor, Doug Lindahl, testified that based on Dirshe's work restrictions, inability to speak English, and lack of other skills, Dirshe had entirely lost his ability to earn a wage.

Based on Dirshe's inability to earn a living after the injury—and Cargill's claim that he was fired for cause—the workers-compensation case focused mainly on whether Dirshe would receive a work-disability award to compensate him for his post-injury wage loss. As we have already noted, K.S.A. 2015 Supp. 44-510e(a)(2)(E)(i) provides that a worker can't recover for wage loss if terminated for cause: "Wage loss caused by voluntary resignation or termination for cause shall in no way be construed to be caused by the injury." Since only losses caused by the injury are recoverable, the worker can't receive an award to compensate for lost wages if the employee is fired "for cause." See K.S.A. 2015 Supp. 44-510e(a)(2)(C)(ii) (providing that work-disability awards are only available when the wage loss "is directly attributable to the work injury and not to other causes or factors").

The administrative law judge who heard the case—and the Board, which heard Dirshe's administrative appeal—agreed with Cargill that Dirshe was properly terminated for cause, thus ruling out any work-disability wage-loss benefits.

Neither the workers-compensation statute nor any previously published appellate decision specifically describes what constitutes "cause" for termination. To determine whether Cargill had proper cause to fire Dirshe, the Board applied a test set out in an unpublished decision of our court from 2006, *Morales-Chavarin v. National Beef Packing Co.*, No. 95,261, 2006 WL 2265205, at *5 (Kan. App.) (unpublished opinion), *rev. denied* 282 Kan. 790 (2006):

> "[T]he proper inquiry to make when examining whether good cause existed for a
> termination in a workers compensation case is whether the termination was reasonable,

6

given all of the circumstances. Included within these circumstances to consider would be whether the claimant made a good faith effort to maintain his or her employment. Whether the employer exercised good faith would also be a consideration. In that regard, the primary focus should be to determine whether the employer's reason for termination is actually a subterfuge to avoid work disability payments."

The *Morales-Chavarin* court also cited to a case from the United States Court of Appeals for the Tenth Circuit, applying Kansas law, that defined good cause for termination of an employee in the context of benefits provided by the employer other than workers-compensation benefits:

"'Cause' . . . is a shortcoming in performance which is detrimental to the discipline or efficiency of the employer. Incompetency or inefficiency or some other cause within the control of the employee which prohibits him from properly completing his task is also included within the definition. A discharge for cause is one which is not arbitrary or capricious, nor is it unjustified or discriminatory." *Weir v. Anaconda Co.*, 773 F.2d 1073, 1080 (10th Cir. 1985).

Athough the *Morales-Chavarin* opinion from 2006 actually predates the statutory provision at issue here, adopted in 2011, we agree with the Board that it provides an accurate and useful summary of what constitutes good cause to terminate an employee for the purpose of determining whether the employee can qualify for work-disability benefits. See *Merrill*, 2016 WL 3202663, at *7-10 (recounting events leading to 2011 enactment of statutory provision that employee terminated for cause doesn't qualify for work-disability benefits and applying *Morales-Chavarin* test).

With that test in mind, we turn to the Board's factual findings and its legal conclusion that Dirshe was fired for cause. The Board found that Dirshe had previously been "written up or counseled three times" for things that Reid, the human resources manager, considered sufficient by themselves to justify termination. The Board accepted

Medrano's testimony that Dirshe had let tails go by without attempting to cut them off on several occasions, even after he had been taken to the office for "counseling" about the problem. Based on these facts, the Board concluded that Dirshe was fired for cause.

The Board's factual findings are supported by substantial evidence, and we cannot disagree with its legal conclusion. The evidence accepted by the Board showed that Dirshe simply wasn't doing his job. And there's no basis, given the Board's findings, to conclude that Cargill terminated Dirshe in an attempt to avoid work-disability payments. Cargill had given Dirshe a job that accommodated his very substantial limitations, and Debbie Henning, the workers-compensation coordinator for Cargill, testified that the company would have continued Dirshe in that position indefinitely had he performed the job. Dirshe has not shown error in the Board's conclusion that he was fired for cause and, as a result, that he did not qualify for a work-disability award to compensate for his wage loss.

This does not mean that Dirshe receives nothing. He still is entitled to an award based on his functional-impairment rating. To determine the amount of that award, the Board adopted a rating of 18% functional impairment to the whole body, averaging the ratings of Dr. Neel (17%) and Dr. Brown (19%). The Board concluded that both doctors were equally credible.

Dirshe has separately appealed the impairment rating, asking us to adopt the 19% rating provided by Dr. Brown. The Board found both Dr. Neel and Dr. Brown equally credible, and we find no basis in the evidence to throw out the opinion of either doctor. The ratings of the two doctors are quite similar, and we have in other cases approved the Board's decision to average the ratings when qualified physicians gave equally credible opinions. *See, e.g.*, *Karr v. Mid Central Contractors*, No. 113,744, 2015 WL 8591327, at *5 (Kan. App. 2015) (unpublished opinion); *Carrizales v. Winsteads Restaurants*, No.

8

90,080, 2004 WL 117347, at *3 (Kan. App. 2004) (unpublished opinion). The Board's 18% functional-impairment rating is supported by substantial evidence.

We affirm the decision of the Workers Compensation Board.