NOT DESIGNATED FOR PUBLICATION

No. 117,984

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LORETTA BACHAN,
*Appellant*,

v.

ARMOUR SWIFT ECKRICH MEATS, LLC,

and

SAFETY NATIONAL CASUALTY CORP.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed April 13, 2018. Affirmed.

*Jeff K. Cooper*, of Cooper Law Office, of Topeka, for appellant.

*Dallas L. Rakestraw* and *Travis L. Cook,* of McDonald Tinker PA, of Wichita, for appellees.

Before POWELL, P.J., GREEN, J., and HEBERT, S.J.

PER CURIAM: Loretta Bachan appeals from a decision of the Kansas Workers Compensation Board (the Board) finding she was not entitled to an award of work disability benefits. The Board determined that Bachan voluntarily resigned or was rightfully terminated from her employment with Armour Swift Eckrich Meats, LLC (Armour Eckrich).

1

We find that the Board's determination is supported by substantial evidence in the record as a whole and, accordingly, we affirm the Board's decision.

*Factual and Procedural Background*

In 2013, Bachan had been employed as a production worker by Armour Eckrich in Junction City for approximately seven years. In her position, Bachan packaged sausage into boxes and placed the packaged boxes onto pallets. The position was fast-paced and required continuous standing as well as repetitive bending, lifting, and twisting of her body. Bachan worked four to six 12-hour shifts per week, depending on the amount of orders the facility received.

On July 12, 2013, Bachan was injured at work when she fell and fractured her right hip. Bachan was immediately transported to the hospital and Dr. Allan D. Holiday, Jr. performed surgery on her hip the next day. Later that month, Bachan filed her workers compensation claim. For several weeks after the surgery, Bachan did not work based on Dr. Holiday's recommendation. Between September and mid-October 2013, Dr. Holiday assigned temporary work restrictions for Bachan to do desk work only. Dally Sierra, Armour Eckrich's Human Resources (HR) Manager at the Junction City facility, admitted that the facility could not find an accommodated position for Bachan during this time period.

In mid-October 2013, Dr. Holiday released Bachan to full work or regular duty with no restrictions. Sierra testified Armour Eckrich follows doctors' recommendations when employees return to work after an injury. Bachan used two weeks' vacation time before returning to work in early November because she did not feel she was completely healed. From November 2013 to January 2014, Bachan returned and worked regular duty as a production worker. Bachan testified she felt pain at work from her groin area down

2

to her knee which increased as her shift progressed, causing her to develop a limp. She took prescription medication to help ease the pain.

Bachan testified that she informed Sierra about her pain and discomfort one time while discussing taking time off under the Family Medical Leave Act (FMLA), but that Sierra told her she would have to wait until March 2014 to take such FMLA leave. Sierra, in turn, testified that she did not recall if Bachan had reported discomfort to her, but she further testified that had Bachan done so, Sierra would have referred her to Kim Norris, the facility safety manager. At the time of the hearings on Bachan's claim, Norris no longer worked at the Junction City facility. Bachan admitted that Norris had on one occasion directly asked her how she was doing following her surgery and that she had not informed Norris of her pain and discomfort at work. Bachan further admitted that she had not requested any additional medical treatment or job modifications after returning to regular work duty in November.

However, in December 2013, apparently unbeknownst to Armour Eckrich, Bachan's attorney arranged for her to see Dr. Edward Prostic. Bachan told Dr. Prostic she continued to have pain from the groin area down to her knee. Dr. Prostic determined that Bachan's July 2013 hip injury was the prevailing cause of her pain and that Bachan needed long-term follow-up care and may potentially need a total hip replacement. Dr. Prostic further found that Bachan had a 10% whole body impairment. This information was not disclosed to Armour Eckrich at the time.

In February 2014, Bachan felt she could no longer work the 12-hour shifts due to her continuing pain, so she decided to stop reporting for work. There is no suggestion that Bachan consulted with her counsel regarding this unilateral decision. Bachan admitted she did not call in or advise Armour Eckrich why she was not reporting. She acknowledged she was fully aware that this violated the company's no call/no show attendance policy which would subject her to termination. Under Armour Eckrich's no

3

call/no show attendance policy, the company considers that after three consecutive no call/no show absences, an employee has voluntarily terminated from his or her position, and is discharged from the payroll. Bachan's payroll record shows that she incurred 15 consecutive no call/no show absences between February 10 and February 28, 2014, and was discharged from the payroll as a result. Sierra testified that Armour Eckrich does not have a policy to call employees who have no call/no show absences and she had no recollection or record of anyone having called Bachan.

After she stopped reporting for work, Bachan withdrew in cash the total balance of her Armour Eckrich retirement account. She has not had a job since leaving Armour Eckrich.

In May 2014, the Administrative Law Judge (ALJ) authorized Dr. Scott Cook to conduct an independent medical examination of Bachan. In September 2014, Dr. Cook examined Bachan and determined that her first surgery was successful but she was experiencing pain due to osteoarthritis which developed, in part, from her work injury. Dr. Cook determined that her hip injury at Armour Eckrich was the prevailing cause of her hip pain.

In November 2014, the ALJ authorized Dr. Cook to treat Bachan. Dr. Cook first treated Bachan with a steroid injection but later determined that Bachan required a total hip replacement. In April 2015, Dr. Cook performed Bachan's total hip replacement surgery and required she have annual follow-up visits. In August 2015, Dr. Cook assigned Bachan permanent work restrictions which included limiting her to eight-hour shifts and prohibited any repetitive bending, kneeling, squatting, climbing, or crawling.

After a final workers compensation hearing, the ALJ entered an award and found that Bachan had suffered a 15% impairment to the body as a whole. The ALJ found Bachan was entitled to temporary total disability compensation at the rate of $449.04 per

week or a lump sum of $8,855.07 plus weekly permanent partial disability compensation until the amount due and owing was paid, less any previously paid amount for her 15% functional disability. The ALJ found Bachan was entitled to unauthorized medical treatment not to exceed $500 and to future medical treatment for her injuries.

However, the ALJ determined that Bachan was not entitled to a work disability award because she had voluntarily resigned from her position. The ALJ found unpersuasive Bachan's argument that she had not voluntarily resigned because she had stopped working due to the chronic pain from her hip injury.

Bachan thereafter applied for review by the Board, arguing the ALJ erred in finding she was not entitled to work disability. In June 2017, the Board entered its order wherein a majority of the Board found Bachan was not entitled to work disability because she had voluntarily resigned and/or was rightfully terminated when she stopped reporting for work in violation of Armour Eckrich's no call/no show policy. (A minority of the Board dissented from this result, and would have found that Bachan resigned due to chronic pain and that Dr. Holiday's lack of work restriction after her first surgery was unrealistic.)

It is from this order of the Board that Bachan has taken timely appeal.

*Substantial evidence supports the Board's finding that Bachan is not entitled to work disability.*

On appeal, Bachan argues the finding she voluntarily resigned or was rightfully terminated is not supported by substantial evidence. She argues that because she had chronic pain from her workplace injury which made her physically incapable of performing her job, her decision to quit reporting for work was justified and did not constitute a voluntary resignation.

5

*Standard of Review*

The Kansas Judicial Review Act, K.S.A. 77-601 et seq., governs an appellate court's review of cases under the Workers Compensation Act. K.S.A. 2017 Supp. 44-556(a). At a hearing before the Board, the claimant has the burden to prove his or her right to compensation. *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 137, 343 P.3d 114 (2015). "'Burden of proof' means the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true on the basis of the whole record." K.S.A. 2017 Supp. 44-508(h). On appeal, the party asserting that the Board erred has the burden to prove it. K.S.A. 2017 Supp. 77-621(a)(1); *Moore*, 51 Kan. App. 2d at 137.

An appellate court may grant relief if the Board erroneously interpreted or applied the law. K.S.A. 2017 Supp. 77-621(c)(4); *Clayton v. University of Kansas Hospital Authority*, 53 Kan. App. 2d 376, 379, 388 P.3d 187 (2017). Whether the Board properly interpreted and applied a statute is a question of law subject to de novo review. 53 Kan. App. 2d at 379.

We review the Board's factual findings in light of the record as a whole to determine whether they are supported by substantial evidence. K.S.A. 2017 Supp. 77-621(c)(7); *Moore*, 51 Kan. App. 2d at 137. "Substantial evidence is 'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.' [Citation omitted.]" *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015).

> "This analysis requires the court to (1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings. The

6

court does not reweigh the evidence or engage in de novo review. [Citations omitted.]"
*Williams v. Petromark Drilling, LLC*, 299 Kan. 792, 795, 326 P.3d 1057 (2014).

Generally, the analysis requires us to determine if the evidence supporting the agency's decision has been "so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion." *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009).

*Entitlement to Work Disability*

The general requirements for entitlement to work disability are set forth in K.S.A. 2017 Supp. 44-510e(a)(2)(C). In the instant appeal, however, we are called upon to review the Board's application of the exception set forth in K.S.A. 2017 Supp. 44-510e(a)(2)(E)(i) which provides that in calculating wage loss for purposes of determining work disability any "[w]age loss caused by voluntary resignation or termination for cause shall in no way be construed to be caused by the injury."

The Board entered a somewhat hybrid finding that Bachan was not entitled to work disability because she either voluntarily resigned or was rightfully terminated as a result of her decision to simply stop reporting to work in violation of the employer's no call/no show policy. In reaching this conclusion, the Board majority focused on "how" Bachan quit her job, rather than on "why." The Board applied a good faith analysis which our court has previously employed:

> "'[T]he proper inquiry to make when examining whether good cause existed for a
> termination in a workers compensation case is whether the termination was reasonable,
> given all of the circumstances. Included within these circumstances to consider would be
> whether the claimant made a good faith effort to maintain his or her employment.
> Whether the employer exercised good faith would also be a consideration. In that regard,

7

the primary focus should be to determine whether the employer's reason for termination is actually a subterfuge to avoid work disability payments.'

. . . .

"'"Cause" . . . is a shortcoming in performance which is detrimental to the discipline or efficiency of the employer. Incompetency or inefficiency or some other cause within the control of the employee which prohibits him from properly completing his task is also included within the definition. A discharge for cause is one which is not arbitrary or capricious, nor is it unjustified or discriminatory.' [Citations omitted.]" *Dirshe v. Cargill Meat Solutions Corp.*, 53 Kan. App. 2d 118, 122, 382 P.3d 484 (2016).

Bachan asserts the Board's finding that she was rightfully terminated is not supported by substantial evidence. She claims she acted in good faith by telling Armour Eckrich of her pain and discomfort and it was Armour Eckrich who acted in bad faith by ignoring her complaints and failing to offer her lighter duty work and additional medical care.

*The Evidence and the Board's Analysis*

We first note that Bachan's assertions would call upon us to reweigh the evidence considered by the Board in reaching its conclusions. This obviously is not the role of an appellate court. Our review is limited to examining (1) the evidence that both supports and contradicts the Board's findings; (2) the hearing officer's credibility determinations, if any; and (3) the Board's explanation for why the evidence supports its findings. See *Williams*, 299 Kan. at 795.

In weighing and crediting the evidence in the record, the Board considered Bachan's claim that she had reported her discomfort to Sierra on one occasion, but the Board also considered Sierra's testimony that she did not recall if Bachan had disclosed her pain and discomfort, and credited Sierra's explanation that, if Bachan had made such complaint, Sierra would have referred her to Norris, the facility safety manager.

8

Significantly, it was noted that Bachan admitted she did not tell Norris—the very supervisor to whom Sierra would have referred her to—about her discomfort at work despite Norris having directly inquired of Bachan how she was doing following her first surgery.

The Board's resolution of the issues of good faith and notice is further supported by Dr. Holiday's release of Bachan to work without restriction in October 2013. Sierra testified that the company policy is to follow a doctor's recommendation when an employee returns to work following a workplace injury. Although it was noted Bachan used some accrued vacation time prior to returning to work after the unrestricted release, she admitted that she did not request any change to her job duties or any additional medical treatment from Armour Eckrich after her return and prior to her decision to stop reporting for work.

Bachan specifically testified that she made her decision to not call in or show for work with full awareness she would be subject to termination. She acknowledged she was resigned to the fact she was done working at Armour Eckrich. She then accrued 15 consecutive days of no call/no show absence without reporting her pain and discomfort to Armour Eckrich, resulting in her termination from the payroll. The record as a whole, therefore, would justify the Board's conclusion Bachan had failed to act in good faith with regard to disclosure of her pain and discomfort to Armour Eckrich.

The Board, in finding that Armour Eckrich acted in good faith terminating Bachan from the payroll, implicitly found that the employer did not have adequate notice of her continuing pain or inability to perform her job duties. The Board further considered Bachan's failure to request lighter duties and/or more medical treatment supported the finding that she did not make an effort to maintain her position.

9

In reaching this conclusion, the Board distinguished two unpublished opinions of this court relied upon by Bachan. In *Eder v. Hendrick Toyota*, No. 114,824, 2016 WL 7324454 (Kan. App. 2016) (unpublished opinion), an employee's resignation was held to be involuntary due to pain and physical limitations which prevented him from performing his job duties. But, in that case, the employee had fully informed his employer of the situation and they had engaged in a series of job accommodation efforts prior to the employee's final resignation. Similarly, in *Locke v. Barnds Bros., Inc.*, No. 112,029, 2015 WL 2137207 (Kan. App. 2015) (unpublished opinion), the employer was fully aware of the employee's limitations and situation, and they had worked together to accommodate Locke's job duties in an effort to retain him in employment.

We agree with the Board's analysis that neither of these cases are controlling or persuasive in the instant appeal since Bachan neither informed her employer of her inability to perform nor sought any job accommodation.

Significantly, the record as noted above, supports by substantial evidence Bachan's admissions that she knowingly and intentionally violated the company no call/ no show attendance policy. Thus, there is no basis for any implication or suggestion that Armour Eckrich terminated Bachan as a "subterfuge to avoid work disability payments." See *Dirshe*, 53 Kan. App. 2d at 122.

Implicit in the Board's ruling is that Bachan could have exhibited good faith and potentially mitigated the consequences of failing to report to work by simply calling in and advising Armour Eckrich that her pain and discomfort had reached the point that she could no longer work until she had further medical treatment and/or job accommodation. But she chose not to pursue this reasonable course of action. Rather she chose to quit her job at a time when she was under no medical work restrictions known by or disclosed to her employer.

10

*Conclusion*

As the appellant herein, Bachan has failed to carry her burden to prove the Board's decision was not supported by substantial evidence or was otherwise in error. The plain language of K.S.A. 2017 Supp. 44-510e(a)(2)(E)(i) is cast in the disjunctive:  "voluntary resignation *or* termination for cause." (Emphasis added.) The Board's findings meet either or both criteria for work disability disqualification, and its conclusion is affirmed.

Affirmed.