NOT DESIGNATED FOR PUBLICATION

No. 118,844

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CANDELARIO GARCIA,
*Appellant*,

v.

TYSON FRESH MEATS, INC.
*Appellee*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed November 30, 2018. Affirmed.

*Stanley R. Ausemus*, of Stanley R. Ausemus, Chtd., of Emporia, for appellant.

*Randall W. Schroer*, of Morrow Willnauer Church, L.L.C., of Kansas City, Missouri, for appellee.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

BUSER, J.:  This is an appeal of a workers compensation case. The administrative law judge (ALJ) determined that Candelario Garcia had an 8% permanent partial disability to the body as a whole and awarded him 33.2 weeks of permanent partial disability pay totaling $10,501.16. The ALJ also determined that Garcia was not entitled to work disability because Tyson Fresh Meats, Inc. (Tyson) had terminated him for cause. The Kansas Workers Compensation Board (Board) affirmed the findings. Garcia appeals.

1

On February 11, 2014, while working on light janitorial duty at Tyson, Garcia slipped on ice, fell, and injured his back. He promptly reported the accident to Tyson who sent him to a physician. Garcia's treatment consisted of physical therapy and medication. Still, Garcia reported that he was in constant pain that ran from his waist down to both of his legs, and that interfered with his activities of daily living. Dr. James A. Britton evaluated Garcia on August 5, 2014, and diagnosed him with a traumatic aggravation of his degenerative lower back at the level of L5-S1.

Garcia returned to light duty work after the accident. On August 19, 2014, however, Tyson terminated Garcia for poor work performance. In response, Garcia engaged Tyson's alternative dispute resolution (ADR) process. As a result, Garcia's termination was reversed, he was issued a written warning about his work performance, and his employment with Tyson was reinstated.

On August 29, 2014, Norma Fraire, Human Resources Manager for Tyson, testified during the workers compensation proceedings that she called Garcia and informed him of the ADR results. She also instructed him to report to the facility on September 2, 2014. Garcia acknowledged receiving the call but he did not report for work on September 2, 2014. As a result, Fraire tried to contact Garcia but she could not reach him by phone. Fraire then mailed Garcia a certified letter summarizing his employment reinstatement and instructing him to report to the Tyson facility by September 22, 2014, or he would be removed from the payroll.

When Garcia arrived at Tyson on September 22, 2014, he was directed to speak with Mitch Young, a human resources manager, about his return to work. But Garcia stated he had an urgent matter to attend to and he would return on September 25, 2014, to talk with Young. On that date, after Garcia spoke with Young, Fraire verified his contact

information and advised Garcia that someone from Tyson would call him with his return employment date. Fraire informed Garcia that the Tyson phone number would appear "unavailable" on caller ID.

Fraire testified that she tried to call Garcia on September 29, 2014, and October 1, 3, and 6, 2014. According to Fraire, no one answered when she called Garcia but she left messages instructing Garcia to return her call. On the other hand, Garcia testified that he never received a call and that he had no answering machine.

Catherine Moyer, General Manager and CEO of Pioneer Communications, Garcia's telephone service provider, provided a log of all incoming calls to Garcia's phone during the relevant time period. The phone log did not reflect calls on the dates that Fraire said she called Garcia; however, the log showed six incoming calls to Garcia with an originating phone number of 0000 on August 29, 2014; September 3, 11, and 12, 2014; and October 2 and 7, 2014. Fraire testified about the possible causes of errors in the records, and she could not testify if the calls originated from Tyson.

After being unable to contact Garcia and having no contact from him, Tyson terminated his employment on October 8, 2014, for failure to report to work. Fraire testified that had Garcia returned to work, Tyson had a position available for him.

On October 7, 2014, Dr. Britton discussed with Garcia applying for social security disability because of his bilateral shoulder problems. Dr. Britton also recommended back surgery although Garcia declined. Over time, Garcia's pain improved, and on July 28, 2015, Dr. Britton determined that he had reached his maximum medical improvement. Dr. Britton assigned a 7% whole person impairment.

One year later, on September 14, 2015, Dr. Pedro A. Murati evaluated Garcia and opined that he was "essentially and realistically unemployable." Dr. Murati assigned Garcia a 10% whole person impairment and an 89% task loss.

The ALJ appointed Dr. Peter V. Bieri to complete an independent medical evaluation. Dr. Bieri agreed that Garcia's injury was consistent with Dr. Britton's diagnosis of traumatic aggravation of spondylolisthesis, grade II, at L5-S1. He concluded that Garcia had achieved maximum medical improvement and his impairment was permanent and stabilized. Dr. Bieri awarded Garcia a 7% whole person impairment with an additional 1% for pain being a significant factor. He found Garcia had a 16.7% task loss.

Garcia completed vocational assessments with Steve Benjamin and Doug Lindahl. Benjamin determined that Garcia suffered a 100% wage loss because he was unemployed. He identified 12 tasks Garcia completed while working on light janitorial duty and determined that under Dr. Bieri's restrictions, Garcia could return to the open labor market and earn $350.27 weekly, a 26.2% wage loss. However, under the restrictions by Dr. Murati, Garcia could not reenter the open labor market. Lindahl identified three tasks Garcia performed as a cattle driver and found that under the restrictions put in place by Dr. Bieri, Garcia could return to light duty work in Tyson's fabrication department. He also found that under the restrictions by Dr. Murati, Garcia could not return to the open labor market.

At the conclusion of the regular hearing, the ALJ found that Garcia's wage loss was not directly attributable to his work injury as required under K.S.A. 2017 Supp. 44-510e(a)(2)(C)(ii) for an employee to receive work disability in addition to an award for permanent partial disability. The ALJ found that Garcia abandoned his employment, noting that although it was unclear whether he received a call from Tyson, he never contacted his employer. In short, the ALJ found Garcia made little to no effort to

4

maintain his employment with Tyson although Tyson could accommodate his physical restrictions and would have paid him the same wages as before the accident.

The ALJ found Dr. Bieri to be the most credible witness in his opinion that Garcia suffered an 8% permanent partial disability to the whole body. She determined Garcia was entitled to 33.2 weeks of permanent partial disability at the rate of $316.30 per week, for a total award of $10,501.16. The ALJ also noted that it was more probable than not that Garcia would require future medical treatment and, as a result, determined he was entitled to future medical treatment upon proper application and approval.

Garcia appealed the ALJ's determination to the Board. During oral arguments before the Board, however, Garcia and Tyson stipulated that the 8% whole person functional impairment determined by the ALJ was no longer in dispute. The Board affirmed the ALJ's determination. The Board found that the record showed multiple attempted contacts to inform Garcia to return to work. It concluded that even without considering Fraire's alleged phone contacts, the phone conversation on August 29, the letter on September 12, 2014, and the two contacts at the facility on September 22 and 25, 2014, were sufficient to show Tyson's intent for Garcia to return to work.

The Board questioned Garcia's intent to return to work based on his failure to appear at the facility on September 2, 2014, his quick departure on September 22, 2014, and his failure to follow up after he had not heard back from Tyson. The Board found it "intriguing" that the phone log showed the 0000 contacts "suspiciously close" to the dates Fraire reported that she had called Garcia. The Board determined that Tyson terminated Garcia for cause and he was, therefore, ineligible for a wage loss under K.S.A. 2017 Supp. 44-510e(a)(2)(E)(i). The Board also upheld the ALJ's determination that Garcia had sustained an 8% functional impairment.

5

Garcia appeals.

## WAS GARCIA TERMINATED FOR CAUSE?

Garcia contends he is entitled to a work disability because Tyson wrongfully terminated him for failing to report to work without ever contacting him. Garcia asserts that because he never received a phone call to return to work that this undisputed fact can only lead to the conclusion that he was wrongfully terminated. See *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). Garcia requests that the Board's decision be reversed and the case remanded to the ALJ for recalculation of the award to include an award for work disability of not less than $130,000.

On the other hand, Tyson counters that Fraire made multiple attempts to contact Garcia after confirming his contact information, yet he failed to return her calls or contact Tyson about returning to employment. As a result, Tyson contends that Garcia is limited to the award for his functional impairment because he failed to prove that he was entitled to an award for work disability.

We begin the analysis with a summary of our standard of review. The Kansas Judicial Review Act (KJRA) governs our review of cases under the Workers Compensation Act. K.S.A. 2017 Supp. 44-556(a). At a hearing before the Board, the claimant has the burden of proving his or her right to compensation. *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 137, 343 P.3d 114 (2015). On appeal, the party claiming error has the burden to show error occurred. K.S.A. 2017 Supp. 77-621(a)(1); *Moore*, 51 Kan. App. 2d at 137.

K.S.A. 2017 Supp. 77-621(c) sets forth the scope of review for cases governed by the KJRA. In this appeal, Garcia challenges the agency action under K.S.A. 2017 Supp. 77-621(c)(7). This provision allows a court to grant relief upon finding that

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act." K.S.A. 2017 Supp. 77-621(c)(7).

The appellate court reviews the factual findings in light of the record as a whole by requiring a review of the evidence both supporting and contradicting the Board's findings, giving consideration to credibility determinations, and reviewing the agency's explanation regarding why the evidence supports its findings. K.S.A. 2017 Supp. 77-621(d); *Trevizo v. El Gaucho Steakhouse*, 45 Kan. App. 2d 667, 671-72, 253 P.3d 786 (2011). The Court of Appeals does not reweigh the evidence. K.S.A. 2017 Supp. 77-621(d); *Dirsche v. Cargill Meat Solutions Corp.*, 53 Kan. App. 2d 118, 119, 382 P.3d 484 (2016). Finally, our court independently determines any legal issues based on our interpretation of the Workers Compensation Act, giving no deference to the Board's interpretation. 53 Kan. App. 2d at 119-20.

The Board affirmed the ALJ's determination that Tyson terminated Garcia's employment for cause based on Tyson's attempts to have Garcia return to work and Garcia's failure to return or follow up with Tyson after Fraire advised him that his employment was reinstated. Although the phone logs did not directly correspond with Fraire's testimony that she called Garcia on specific dates, the Board found it "intriguing" that the calls with unknown origins occurred "suspiciously close" to the dates Fraire claimed she tried to call Garcia. For her part, Moyer testified that she could not validate whether those calls came from Tyson because there was no information provided about the origin of the calls.

Under K.S.A. 2017 Supp. 44-510e(a)(2)(E)(i), if an injured employee is terminated for cause, his wage loss is not attributable to the injury. As a result, the

7

employee would not be eligible for permanent partial general disability, i.e., work disability, in addition to the functional impairment finding.

In applying K.S.A. 2017 Supp. 44-510e(a)(2)(E)(i), our court must determine whether the employee's termination was reasonable given all the circumstances. *Dirsche,* 53 Kan. App. 2d at 122. Because the Workers Compensation Act does not define what constitutes "cause" for termination, our court considers whether the employee made a good-faith effort to maintain employment and whether the employer exercised good faith regarding the termination. In this latter regard, we are attentive to whether the reason for termination was a "'subterfuge to avoid work disability payments.'" 53 Kan. App. 2d at 122.

The Board found that Tyson showed its good-faith intent to maintain Garcia's employment in three ways. First, with regard to Fraire's phone call on August 29, 2014, in his brief to the Board, Garcia acknowledged the call and his subsequent failure to report for work on September 2, 2014. Second, in the letter Fraire sent to Garcia on September 12, 2014, Fraire summarized the phone call, recounting that she informed Garcia of the ADR results, had instructed him to return to work on September 2, 2014, and left several messages after he failed to return on that date. Fraire also informed Garcia that if he had not made contact by September 22, 2014, Tyson would remove him from the payroll. In this regard, the Board noted Tyson's two contacts with Garcia when he reported to the facility on September 22 and 25, 2014.

Third, there is no dispute over the two contacts when Garcia went to Tyson. Both parties agree that Garcia left abruptly because of an urgent matter, without speaking with Young. During the second visit, Garcia spoke with Young, Fraire verified his contact information, and she told him that Tyson would call to advise him of his return to work date. Substantial evidence was shown in support the Board's finding that Tyson exhibited good faith in maintaining Garcia's employment.

8

In its finding that Garcia failed to show a good-faith effort to maintain employment, the Board pointed to his failure to return to work on September 2, 2014, his abrupt departure on September 22, 2014, and his failure to follow up after he had been advised that he could return to work. Although Garcia did return on September 25, 2014, to speak with Young, his rush to leave and inability to provide an acceptable answer about why he left so abruptly on September 22, 2014, suggested that he was not prepared to return to work. Fraire also testified that when Garcia returned, he indicated that he had already filed for unemployment, which would support the Board's finding that he demonstrated no desire to return to work. Of note, when Young questioned Garcia about his initial failure to report to work or call in, Garcia stated that he had been out of town but could not provide any proof and eventually he just acknowledged that he had no good reason.

Garcia testified at the hearing that he never received Fraire's call about returning to work and was still waiting for Tyson to call. He indicated that he had no answering machine, but Garcia subscribed to the basic phone service through Pioneer Communications, which included voice mail. Garcia testified he likely missed calls previously because he had been outside his house. Knowing that he missed calls when he was away from the house, and his failure to initiate contact with Tyson in case Fraire had called, further supports the Board's determination that Garcia demonstrated no desire to return to work.

Having reviewed the entire record, in accordance with our standard of review, we are persuaded that the Board's action in denying work disability to Garcia because he was terminated from employment for cause was based on a determination of fact that was supported by sufficient substantial competent evidence when viewed in light of the record as a whole. See K.S.A. 2017 Supp. 77-621(c)(7).

Affirmed.

9