NOT DESIGNATED FOR PUBLICATION

No. 119,948

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MANUEL ANTONIO RAMIREZ,
*Claimant*,

v.

GARAY'S ROOFING, LLC,
*Respondent*,

and

KELLY ENTERPRISES, INC., and
STARNET INSURANCE CO,
*Appellants*,

and

KANSAS WORKERS COMPENSATION FUND,
*Appellee*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed July 26, 2019. Affirmed.

*Michael R. Kauphusman* and *Ryan D. Weltz*, of Wallace, Saunders, Chartered, of Overland Park, for appellants Kelly Enterprises, Inc. and Starnet Insurance Company.

*Kendra M. Oakes*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee Kansas Workers Compensation Fund.

Before LEBEN, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Kelly Enterprises, Inc. (Kelly) appeals the decision of the Kansas Workers Compensation Appeals Board that Kelly was liable for the workers'-compensation benefits of an employee of a contractor it had hired. Kansas law provides this statutory liability as an employer when a party, acting as the principal, hires someone else by contract to perform "the whole or any part of the work undertaken by the principal." K.S.A. 44-503(a).

Kelly argues that it isn't responsible under this statute, but the evidence showed that Kelly regularly builds apartment buildings that it then manages and that it acts as the general contractor for those building projects. When Kelly hired a painting contractor, it hired someone else by contract to perform "part of the work undertaken by the principal." We find no error in the Board's conclusion that Kelly is liable for the workers'-compensation benefits owed to Manuel Antonio Ramirez, the employee here.

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Ramirez was injured while working for Garay's Roofing & Painting, LLC. Silvino Garay, owner of Garay's, had hired Ramirez as a full-time painter to work on the construction of a new apartment complex that's now known as Kelly Reserve. Kelly had hired Garay's to help build the complex.

Kelly was a property management company. But besides managing apartment complexes, it also built them. Kelly had overseen the construction of 10 apartment complexes, acting as general contractor. Seven of the complexes belonged to independent businesses owned by members of the Kelly family. The other three were originally Kelly properties but were sold after being rented out for many years. Kelly had built all the complexes it managed.

2

Kelly also provided staff for Kelly properties, but its employees weren't involved in any construction work. It had several employees who did basic maintenance around Kelly properties, but those employees didn't perform tasks such as roofing or exterior painting. Instead, Kelly contracted with others to complete that work.

Kelly contracted with Garay's to roof and paint Kelly Reserve. Kelly had worked with Garay's on several properties over a time span of more than 10 years. Garay's provided Kelly with a certificate of workers'-compensation insurance because Kelly didn't pay contractors who didn't have insurance.

Kelly Reserve took about two to three years to complete. Pat Kelly, the owner of Kelly, managed the project and dealt with all the contractors. According to Pat, building apartment complexes was part of Kelly's business. He went to the construction site at least once a week to make sure the project was running smoothly.

By October 2015, Ramirez had been working on the Kelly Reserve project for about a year and a half. One day, as Ramirez was retouching a paint job, he was standing on a 24-foot ladder when the ladder started to slide backwards. Ramirez fell onto the concrete parking lot, hitting his head and breaking his left arm. An ambulance took him to the hospital, where he had surgery on his arm. He stayed in the hospital for three or four days. Silvino Garay visited Ramirez in the hospital and offered to pay for Ramirez' medical bills. He also gave Ramirez a $600 check to put toward his bills.

Ramirez ended up with $189,495.61 in medical bills. He spoke with Silvino about them a month or two after the accident. Silvino asked for a copy of the bills, and Ramirez sent them. After that, Silvino never contacted Ramirez again and wouldn't answer Ramirez' calls.

Ramirez applied for a hearing with the Division of Workers Compensation, listing Garay's as his employer. He added the Kansas Workers Compensation Fund (Fund) when Garay's turned out to be uninsured. Ramirez also amended his application, listing Kelly as his statutory employer based on K.S.A. 44-503(a).

An administrative law judge (ALJ) found Ramirez had sustained compensable injuries arising out of and in the course of his employment with Garay's. The ALJ also held Kelly was not secondarily liable as Ramirez' statutory employer. The ALJ found Kelly employees didn't do exterior painting and no evidence showed other companies like Kelly normally used their own employees to do this kind of work. The ALJ held the Fund, not Kelly, was liable for Ramirez' compensation because Garay's was uninsured.

The Fund appealed to the Board, arguing that Kelly was liable for Ramirez' compensation. The Board agreed, reversing the ALJ's decision. It noted that Pat acted as the general contractor for Kelly's projects, and he had done so for several years while constructing multiple apartment complexes. Based on this evidence, the Board held construction of apartment complexes was an inherent and integral part of Kelly's business. The Board found Kelly liable as Ramirez' statutory employer.

Kelly then appealed to our court. The Fund filed a brief as appellee. Ramirez and Garay's didn't file briefs.

ANALYSIS

On appeal, Kelly argues the Board erred in finding it was Ramirez' statutory employer. It argues that similar businesses can acquire apartment complexes by means other than constructing them, so construction was not an inherent and integral part of its business. It also contends that it relied in good faith on Garay's insurance certificate.

4

The Fund responds Kelly was Ramirez' statutory employer because construction was a part of its business. The Fund notes that Pat was directly involved in construction work and Pat testified that construction was a part of Kelly's business.

*Standard of Review and the Law of Statutory Employers*

We review the Board's final orders under the Kansas Judicial Review Act (KJRA). K.S.A. 2018 Supp. 44-556(a); K.S.A. 77-601 et seq. At Board hearings, claimants have the burden to prove their right to compensation. K.S.A. 2018 Supp. 44-501b(c); *Dirshe v. Cargill Meat Solutions Corp.*, 53 Kan. App. 2d 118, 119, 382 P.3d 484 (2016). On appeal, the party claiming error has the burden to prove it. K.S.A. 2018 Supp. 77-621(a)(1); *Dirshe*, 53 Kan. App. 2d at 119.

The only issue is whether Kelly is Ramirez' statutory employer, which is a question of fact. See *Bright v. Cargill, Inc*., 251 Kan. 387, 401, 837 P.2d 348 (1992) (reversing summary judgment because principal's status as statutory employer presented genuine issue of material fact); *Falls v. Scott*, 249 Kan. 54, 64, 815 P.2d 1104 (1991) ("[G]enerally speaking, the question of whether an individual is an employee or an independent contractor is considered a question of fact for the jury or trier of facts."). When reviewing factual questions, we consider whether substantial evidence supports the Board's fact-findings. K.S.A. 2018 Supp. 77-621(c)(7); *Atkins v. Webcon*, 308 Kan. 92, 96, 419 P.3d 1 (2018). Substantial evidence has both relevance and substance, and it provides a substantial factual basis from which issues can be determined. 308 Kan. at 96.

When determining whether substantial evidence supports the Board's findings, we consider the full record, including the evidence supporting those findings as well as the evidence contradicting them. We do not reweigh evidence or engage in an independent review. *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). In applying substantial-evidence review when there is some evidence to support the Board's

5

decision, we reverse only when that evidence has been so undermined by cross-examination or other evidence that it cannot support the decision. *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 137-38, 343 P.3d 114 (2015).

With that background, we turn to the statute under which some parties may become the employer of a worker solely for applying the Workers Compensation Act. That statute, K.S.A. 44-503(a), comes into play when the actual employer of someone, like Garay's here, doesn't have the required workers'-compensation insurance. So if someone (like Kelly) contracts with another (like Garay's) to carry out work that is "part of the principal's trade or business," that principal (here, Kelly) becomes an employer for workers'-compensation purposes:

> "*Where any person (in this section referred to as principal) undertakes to execute any work which is a part of the principal's trade or business* or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) *for the execution by or under the contractor of the whole or any part of the work undertaken by the principal*, *the principal shall be liable to pay to any worker employed in the execution of the work any compensation under the workers compensation act which the principal would have been liable to pay if that worker had been immediately employed by the principal*; and where compensation is claimed from or proceedings are taken against the principal, then in the application of the workers compensation act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the worker under the employer by whom the worker is immediately employed. For the purposes of this subsection, a worker shall not include an individual who is a self-employed subcontractor." (Emphases added.) K.S.A. 44-503(a).

These employers are known as "'statutory employers.'" *Robinett v. The Haskell Co.*, 270 Kan. 95, 98, 12 P.3d 411 (2000).

When the actual employer has workers'-compensation insurance, there's no need to bring the statutory employer into the case. But K.S.A. 44-503 allows a contractor's employee to recover workers compensation benefits from either the employee's immediate employer or the principal as long as (1) the work being done by the employee is part of the principal's trade or business, the situation at issue in our case, or (2) the principal has contracted to do the work for a third party, a situation not at issue. *Wheeler v. Rolling Door Co.*, 33 Kan. App. 2d 787, 792, 109 P.3d 1255 (2005). This statute's purpose is to prevent employers from avoiding liability under the Act by contracting with outsiders to do work which employers have undertaken as part of their trade or business. *Robinett*, 270 Kan. at 98.

For the portion of the statute at issue in our case, all the statute requires is that the work being done by the employee be part of the alleged statutory employer's "trade or business" and be work undertaken at least in part by the alleged statutory employer. But in a 1966 case considering this statute, *Hanna v. CRA, Inc.*, 196 Kan. 156, 159-60, 409 P.2d 786 (1966), the Kansas Supreme Court added a gloss to the statute by saying that the work must be either "necessarily inherent in and an integral part of the principal's trade or business" or work that "would ordinarily have been done" by the principal's employees:

> "(1) [I]s the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? [or] (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?"
> 196 Kan. at 159-60.

The *Hanna* court said that these tests are in the alternative, and if either one is answered affirmatively, then the work being done is part of the principal's trade or business. 196 Kan. at 160.

7

In *Bright*, 251 Kan. at 399, the court clarified that the first *Hanna* test isn't concerned with whether the kind of work being done by the injured worker is useful or necessary to the principal's business. Instead, the test asks whether similar businesses use their own employees to do the kind of work being done or whether those businesses contract out that kind of work. The court also held, though, that "[e]ven if other similar businesses would not perform the work through employees, the particular principal may make such work 'a part of its trade or business' by its own past actions." 251 Kan. at 399.

There may be some uncertainty about the continuing viability of the interpretation of K.S.A. 44-503(a) set out in *Hanna* and *Bright*. The tests set out there seem to add language that's not found in the statute itself, and more recent Kansas Supreme Court opinions interpreting the Workers Compensation Act have emphasized that we should rely only on the statutory language. *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 367-68, 361 P.3d 504 (2015); *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 610, 214 P.3d 676 (2009); *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 525, 154 P.3d 494 (2007). Of course, we follow Kansas Supreme Court caselaw unless that court has given some indication that its precedents are no longer valid. *State v. Spencer Gifts*, 304 Kan. 755, 767, 374 P.3d 680 (2016). That might be the case here with the *Hanna* test. But we need not decide that question to determine this appeal. Whether we apply only the statutory language or apply the more-stringent test from *Hanna*, the Board's decision is supported by substantial evidence.

*Whether Kelly Was Ramirez' Statutory Employer*

If we were to apply only the words in the statute, we would determine whether the work Ramirez was doing was part of Kelly's trade or business. The other parts of the statutory test are either met (Kelly hired Garay's to do work for it on a project in which Kelly served as the general contractor) or aren't at issue. In applying that simple test, it's

8

immediately clear that it's met because building apartments is part of Kelly's business. Here's part of Pat's testimony:

> "Q: And Kelly Enterprises actually engages in the building of these properties, don't they?
> "A: We do oversee it, that's correct.
> "Q: You're acting as a general contractor for your projects, aren't you?
> "A: We are.
> "Q: And so with respect to Kelly, part of its business is building apartment buildings, correct?
> "A: That's correct."

So the work Ramirez was doing—part of the construction of a new apartment building—was part of Kelly's business.

To pass the *Hanna* test, though, the work must meet one of two additional requirements. It must either be "inherent in and an integral part of the principal's trade or business" or be something that "ordinarily" would have been done by Kelly employees. The testimony was that Kelly employees did maintenance work but not construction work, so only the first of the *Hannah* tests is relevant here. The question then becomes whether building apartment complexes is inherent in and an integral part of Kelly's business.

The Board said yes, and there's substantial evidence to support that conclusion. Pat testified that building apartment complexes was part of Kelly's business. The company had overseen the construction of *all* the complexes included with the Kelly properties. In total, the company had built 10 apartment complexes, each time acting as the general contractor. Its office manager, Nina Tobaben, testified that Kelly had 45 full-time employees, and she said that all the company's income came from rent paid by tenants of these apartments. This business thus relied on rental income, making apartments critical,

9

and Kelly built all of the apartment buildings it managed. Kelly made the building of apartments a necessary and integral part of its business.

It's true, as Kelly argues, that no Kelly full-time employee works on apartment construction (aside from Pat's direction of the work). And it may be true that companies like Kelly wouldn't use their own employees to do the construction work, either. But that's only a part of the considerations made under the *Hanna* test, and the court said in *Bright* that "[e]ven if other similar businesses would not perform the work through employees, the particular principal may make such work 'a part of its trade or business' by its own past actions." 251 Kan. at 399. Kelly has done that here. It essentially had a division that built apartment complexes—with Kelly (through Pat) acting as the general contractor and hiring out all the other work. See 251 Kan. at 398-99. The building of these apartment complexes wasn't a small task; each project generally took a year or two to complete.

Kelly argues that it could buy apartment buildings rather than construct them, so building the apartments isn't integral to its business. And it notes that it sold three of the buildings. But Kelly needs to have apartment buildings to make money under its own business model. And it has regularly built the buildings it manages.

Kelly's final argument is that it shouldn't be liable because it acted in good-faith reliance on Garay's having workers'-compensation insurance. But there's nothing in K.S.A. 44-503(a) that provides a good-faith exception, and we will not read words into the statute that aren't there. *Hoesli*, 303 Kan. at 362.

We affirm the Board's decision.

10