(343 P.3d 114)
No. 110,883

SHAWN MOORE, *Appellee*, v. VENTURE CORPORATION and
TRAVELERS INDEMNITY CO., *Appellants*.

Opinion filed January 30, 2015.

*Vincent A. Burnett* and *Dallas L. Rakestraw*, of McDonald Tinker, of Wichita, for appellants.

*Melinda G. Young*, of Bretz & Young, of Hutchinson, for appellee.

Before BUSER, P.J., LEBEN and STANDRIDGE, JJ.

LEBEN, J.: Shawn Moore injured his knee at his road-construction job, either when he stepped off a backhoe or shortly thereafter when walking around the backhoe. An administrative law judge denied his request for workers compensation, finding that his injury was the result of walking, which she considered a normal activity of day-to-day living not covered by the Workers Compensation Act. The Workers Compensation Appeals Board reversed, finding that Moore's injury arose out of and in the course of his employment because stepping down and walking around the backhoe were part of a single job task—operating a backhoe—that was not a normal activity of day-to-day living.

On appeal, we look at the overall context of the injury and see if the activity that resulted in it was connected to or inherent in performing the job. See *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 596, 257 P.3d 255 (2011). Here we find that substantial evidence supported the Board's finding. In this case, op-

erating the backhoe was Moore's job duty, stepping down from and walking around the backhoe was part of the work required to operate the backhoe, and no evidence suggested that Moore's injury happened outside the time frame in which he was operating the backhoe. We therefore affirm the Board's decision that Moore's injury was covered under the Workers Compensation Act and not the result of a normal activity of day-to-day living.

## FACTUAL AND PROCEDURAL BACKGROUND

Moore worked for Venture Corporation as an equipment operator, running equipment like pavers and backhoes for road construction. Moore spent his workday "[d]igging holes, smoothing stuff out, [and] laying asphalt" and was "in and out of" equipment all day.

On October 15, 2011, Moore experienced pain in his right knee while at work. He had not previously had any problems with his knee. Doctors later discovered that he had a torn right meniscus and a torn anterior-cruciate ligament (ACL). Dr. Erik Severud surgically repaired Moore's torn ACL in December 2011.

The parties' arguments are based in part on the statements Moore gave over time about what happened. Later the same month that the events took place, he told Rachel Pratt, a claims adjuster with Travelers Insurance (Venture Corporation's insurance carrier), that he had twisted his knee while walking around a backhoe:

"[Pratt]: What happened?
"[Moore]: I just twisted my knee.
"[Pratt]: And what were you doing?
"[Moore]: Walking. I [Inaudible] . . . .
"[Pratt]: Where were you coming from? . . . .
"[Moore]: . . . I was just at work. I was getting off of a backhoe, and I walked around in front of the backhoe and, and that's, it just, I almost hit the ground. It just hurt.
"[Pratt]: So you were just . . .
"[Moore]: And it . . .
"[Pratt]: . . . walking? Did you slip over anything? . . .
"[Moore]: No, didn't step over anything, didn't step in a hole. I . . . don't think that I turned wrong. I, I guess I might've twisted wrong. I don't know.
 . . . .
"[Pratt]: So, you were just walking? What kind of ground was it?

"[Moore]: It was in the grass.

"[Pratt]: Grass? So, you were just . . .

"[Moore]: Yeah.

"[Pratt]: . . . walking? You got out of the backhoe and you were just walking to go around it, and you had pain in your knee?

"[Moore]: Yes.

. . . .

"[Pratt]: Okay. So, just to confirm, you were just walking and you had pain in your knee? Now, did you fall to the ground?

"[Moore]: No, I, I grabbed hold of the bucket of the backhoe so I didn't hit the ground."

At a hearing before an administrative law judge on March 11, 2013, Moore said that his knee had popped as he stepped down off the backhoe:

"[Moore:] I was getting off a backhoe and as I stepped down off the backhoe just my knee just popped and just hurt.

. . . .

"[Moore's attorney:] And were you able to continue to walk on your knee?

"[Moore:] Barely. I mean, it—I took two steps and that's when the pain hit me and then there wasn't much walking after that. I kind of limp around.

. . . .

"[T]he pain hit me after I got off the backhoe but I felt the pop as my foot hit the ground, but it, you know, took two steps for me to actually feel all the pain."

The step on the backhoe was about a foot or a foot and a half from the ground.

The parties also rely on statements by medical personnel who treated or examined Moore. On October 17, 2011, Moore saw physician's assistant Phillip Barnes, who worked under Dr. Nathan Knackstedt. Barnes' treatment notes describe the cause of the injury:

"On 10/15/2011, he stated he got down off of a piece of construction equipment and walked around the piece of equipment and then developed acute right knee pain. He denies injuring his leg when he got off of the machine. Stated he felt a pop and it was followed by severe pain in the right knee in the inferomedial region."

Travelers Insurance denied Moore's claim.

Under the present version of the Workers Compensation Act, an accidental injury is generally covered only if the accident was "the prevailing factor" causing the injury. See K.S.A. 2013 Supp.

44-508(f)(2)(B)(ii). Accordingly, the medical opinions of various doctors addressed whether Moore's knee injury was primarily caused by an on-the-job accident.

On December 8, 2011, attorneys representing Venture Corporation and Travelers Insurance sent Dr. Knackstedt—who had never examined Moore—a letter asking him to confirm that Moore's "activity as described of walking around a piece of equipment and develop[ing] acute right knee pain" was not the prevailing factor in Moore's need for medical attention. Dr. Knackstedt and Barnes signed the letter on December 15, 2011, confirming that, in their medical opinions, that activity was not the prevailing factor in Moore's need for medical attention.

In 2012, Dr. Kenneth Jansson performed a court-ordered independent medical examination of Moore. He understood that the injury occurred when Moore stepped off the backhoe and found that the incident was the prevailing factor causing the injury and need for medical treatment:

"I think at this point it is really impossible to do a completely accurate causation evaluation. I think it is very significant that the patient denies any history of previous knee problems prior to the injury on 10/15/2011. It is also significant that all of his symptoms that he experienced, the swelling, the pain, the pop, and the instability, he directly relates by history, to the injury on 10/15/2011. . . . On the other hand, he presented with a 3+ pivot shift, a 4-10 mm Lachman, and other gross instability, and that is an amount of instability that one would not commonly see with a fresh ACL. I am also a little concerned about these changes I see on the radiographs, if they preceded the surgery, they could be signs of long-term instability. If they are subsequent to the surgery then they could be related to the surgical event itself.

"I think it is in my opinion, far more likely than not, that this ACL injury occurred at the time of the injury on 10/15/2011 and that the procedure should be covered under Workers' Compensation as the prevailing factor. . . . In my opinion, the need for surgery is precipitated by the patient's symptoms, not just by the pathology. This is also the reason why I support saying that this is in fact, the prevailing factor."

In August 2012, Dr. Pedro A. Murati examined Moore at the request of Moore's attorney. Dr. Murati found that Moore's "current diagnoses are within all reasonable medical probability a direct result from the work-related injury that occurred each and every

working day through 10-12-11 during his employment with Venture Corporation."

In January 2013, Dr. John Estivo examined Moore at the request of Venture and Travelers. Dr. Estivo found that Moore's incident at work was not the prevailing factor causing the injury and need for medical treatment:

"The patient states to me today that he was simply in the act of walking around a piece of equipment on level ground on 10/15/2011 when he experienced a pop and pain in his right knee. . . . Based on the history the patient is giving me today, as well as reviewing his medical records, the patient denies having any twisting injury to the right knee. He denies any direct injury at all to the right knee. The typical forces involved resulting in an ACL tear would originate from a pivoting or twisting injury to the knee. . . . The patient is excessively overweight, and this certainly is a major contributing factor to his knee injury. Considering the fact that this patient did not experience any pivoting or twisting injury to the right knee on 10/15/2011, it would be my medical opinion that the ACL tear to the right knee is not a result of the incident of 10/15/2011. I would agree with Dr. Knackstedt in that the prevailing factor regarding this patient's right knee ACL tear would not be the incident of 10/15/2011."

At the initial administrative hearing, Judge Pamela J. Fuller denied Moore's claim. She found that Moore's injury occurred while he was walking—an activity of daily living—and that he had a pre-existing condition in his knee, thus concluding that Moore had failed to prove his injury arose out of and in the course of his employment and that the accident was the prevailing factor causing his injuries and need for treatment.

Moore appealed to the Workers Compensation Appeals Board. The Board found that Dr. Jansson was the most credible expert witness. It reversed Judge Fuller's denial of workers-compensation benefits, finding that Moore's injury arose out of and in the course of his employment and that the accident at work was the prevailing factor causing the injury. The Board found that the injury occurred when Moore stepped off the backhoe and was not the result of a personal or neutral risk, idiopathic cause, or normal activity of day-to-day living. The Board also said that even if Moore had injured his knee while simply walking around the backhoe, his injury would still have arisen out of and in the course of this employment be-

cause the Board viewed stepping down and walking away from the backhoe as part and parcel of operating the backhoe.

Venture and Travelers have appealed to this court.

## ANALYSIS

*Moore's Injury Arose out of and in the Course of His Employment.*

We begin our analysis by noting two background factors that guide our consideration—the standard for appellate review of Board decisions and changes that have taken place in the Kansas Workers Compensation Act.

The Kansas Judicial Review Act governs our review of cases arising under the Workers Compensation Act. K.S.A. 2013 Supp. 44-556(a). At a hearing before the Board, a claimant has the burden of proving his or her right to compensation. *Messner v. Continental Plastic Containers*, 48 Kan. App. 2d 731, 751, 298 P.3d 371, *rev. denied* 297 Kan. 1246 (2013). On appeal to our court, the party claiming error has the burden to show it. See K.S.A. 2013 Supp. 77-621(a)(1).

Whether an injury arose out of and in the course of employment is a question of fact, and we review a challenge to the Board's factual findings in light of the record as a whole to determine whether those findings are supported by substantial evidence. See K.S.A. 2013 Supp. 77-621(c)(7); *Scott v. Hughes*, 294 Kan. 403, 415-16, 275 P.3d 890 (2012). Substantial evidence is "evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing [a] basis of fact from which the issue raised could be easily resolved." *Redd v. Kansas Truck Center*, 291 Kan. 176, 183, 239 P.3d 66 (2010). In considering the record as a whole, the court must "(1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings." *Williams v. Petromark Drilling, LLC*, 299 Kan. 792, 795, 326 P.3d 1057 (2014); see K.S.A. 2013 Supp. 77-621(d). We cannot reweigh the evidence or make our own independent review of the facts. K.S.A. 2013 Supp. 77-621(d).

But we must determine, after reviewing all the evidence, whether the evidence supporting the Board's decision has been so undermined by cross-examination or other evidence that it is insufficient to support its decision. *Ribeau v. Candies*, 50 Kan. App. 2d 824, Syl. ¶ 6, 333 P.3d 921 (2014); *Romkes v. University of Kansas*, 49 Kan. App. 2d 871, Syl. ¶ 7, 317 P.3d 124 (2014); *In re Protests of Oakhill Land Co.*, 46 Kan. App. 2d 1105, 1114, 269 P.3d 876 (2012).

We note too that the legislature amended the Workers Compensation Act effective May 15, 2011. Those amendments were so extensive that some practitioners refer to the amended law as "the new Act." Alvarez, *The 2011 Kansas Workers Compensation Act: Too Sharp a Right Turn?* 81 J.K.B.A. 24, 25 (2012); see Greenwald & Andersen, Workers Compensation, 2011 Kansas Annual Survey 349-53 (Kansas Bar Ass'n 2011); Gold, *2011 Amendments to the Kansas Workers Compensation Act in Light of* Bergstrom v. Spears Manufacturing Company, 21 Kan. J. L. & Pub. Pol'y 329 (2012). The amendments apply to Moore's case because they were in place when he was injured and filed his claim. See *Bryant*, 292 Kan. at 588. Accordingly, we must consider changes in the Workers Compensation Act that apply to Moore's claim; we also must consider the extent to which caselaw under the predecessor statute remains helpful in interpreting new statutory provisions.

Under the amended Act, a claimant is still entitled to workers compensation only if his or her injury arises out of and in the course of employment. K.S.A. 2013 Supp. 44-508(f)(2). An injury does not arise out of and in the course of employment if it occurred as a result of the normal activities of daily life: "The words 'arising out of and in the course of employment' as used in the workers compensation act shall *not* be construed to include: Injury which occurred . . . *by the normal activities of day-to-day living.*" (Emphasis added.) K.S.A. 2013 Supp. 44-508(f)(3)(A)(i).

Venture and Travelers contend that Moore's injury occurred when he was walking around the backhoe and that walking is a normal activity of daily living. Venture and Travelers have asked us to find that substantial evidence did not support the Board's factual finding that Moore's injury arose from his employment, pointing

out that Moore told Pratt he was walking in front of the backhoe when he felt pain in his knee but later told Judge Fuller that his knee popped when he stepped off the backhoe. They also note that Dr. Jansson's opinion—which the Board adopted—didn't account for the possibility that Moore sustained his injury while walking around the backhoe. Because Venture's and Travelers' arguments are based on the idea that an injury that occurs while walking has resulted from a normal activity of day-to-day living and is thus not covered by the Act, our first task is to determine whether walking is always considered a normal activity of day-to-day living.

The Kansas appellate courts have not yet interpreted "normal activities of day-to-day living" in K.S.A. 2013 Supp. 44-508(f)(3)(A)(i), but our courts have analyzed an earlier provision that contained a similar phrase: "An injury shall not be deemed to have been directly caused by the employment where it is shown that the employee suffers disability as a result of the natural aging process or *by the normal activities of day-to-day living*." (Emphasis added.) K.S.A. 44-508(e). The language of that former statute, K.S.A. 44-508(e), is quite similar to the language now found in K.S.A. 2013 Supp. 44-508(f)(3)(A)(i). We find nothing about the minor wording differences to suggest that the analysis found in the key case interpreting the prior statute, *Bryant*, is not equally applicable to the amended Act. We note too that the parties to this appeal both contend that the cases interpreting the former provision, K.S.A. 44-508(e), are applicable when interpreting K.SA. 2013 Supp. 44-508(f)(3)(A)(i).

The court in *Bryant* began its analysis by reporting that prior Kansas appellate cases had interpreted K.S.A. 44-508(e) inconsistently. 292 Kan. at 595. The prior cases didn't state whether the phrase "suffers disability . . . by the normal activities of day-to-day living" meant injury caused by an ongoing strain both away from and on the job or injury that was the result of an activity that may take place both on and off the job. 292 Kan. at 590, 595. The *Bryant* court said that courts should focus on whether the injury occurred "as a consequence of the broad spectrum of life's ongoing daily activities, such as chewing or breathing or walking in ways that were not peculiar to the job, or *as a consequence of an event*

*or continuing events specific to the requirements. of performing one's job.*" (Emphasis added.) 292 Kan. at 595.

Under *Bryant*, walking is not necessarily always classified as a normal activity of day-to-day living; courts now must consider whether it was connected to or inherent in performing the job. 292 Kan. at 596. We have been instructed not to look at isolated movements but instead to look at the *overall context* of what the worker was doing:

"[T]he focus of inquiry should be on . . . whether the activity that results in injury is connected to, or is inherent in, the performance of the job. The statutory scheme does not reduce the analysis to an isolated movement—bending, twisting, lifting, *walking*, or other body motions—but looks to the overall context of what the worker was doing—welding, reaching for tools, getting in or out of a vehicle, or engaging in other work-related activities." (Emphasis added.) 292 Kan. at 596.

For example, Bryant had aggravated a preexisting back condition at work by stooping over to grab a tool and twisting back to work on some equipment and by stooping down to carry out a welding task. Emphasizing that Bryant was completing work tasks—reaching for tools and welding—the court held that he was not engaged in the normal activities of day-to-day living when his injury occurred. 292 Kan. at 596.

Our court applied *Bryant* in *Brackett v. Dynamic Educational Systems*, No. 108,134, 2013 WL 1339916 (Kan. App. 2013) (unpublished opinion). The claimant in *Brackett* traveled regularly for her job. At the end of one trip, she experienced back pain, numbness in her feet, and difficulty moving her legs when she tried to open her car door and leave her vehicle. Our court found that while getting out of a car is a common activity in daily life, the Board had correctly ruled that Brackett's injury was compensable. Opening her car door was "connected to[] and inherent in" the performance in her job, which required that she travel regularly. 2013 WL 1339916, at *9. Accordingly, we affirmed the Board's finding, based on substantial evidence, that her back injury resulted from the required travel. 2013 WL 1339916, at *9. Both the Board and our court cited and applied *Bryant*. 2013 WL 1339916, at *9.

Venture and Travelers argue that Moore's case is similar to *Meyer v. Nebraska Furniture Mart*, No. 107,424, 2012 WL

4937629, at *4 (Kan. App. 2012) (unpublished opinion). In *Meyer*, the claimant suffered an unexplained fall at his workplace while walking to deliver a customer's order. There was testimony that his leg " 'just gave out,' " and he had a later fall at his home that shattered his elbow. The employer argued that his injury was just the result of daily living, and the Board agreed that the injury did not arise out of his employment. We do not find *Meyer* controlling here for two reasons. First, the Board ruled in the employer's favor, so the question on appeal was simply whether substantial evidence supported the Board's finding that the injury did not arise in the course of employment. Our court noted evidence from multiple sources that the claimaint's "leg simply gave out at the time of the accident." 2012 WL 4937629, at *4. Second, the *Meyer* panel relied on several pre-*Bryant* cases defining normal day-to-day activities, 2012 WL 4937629, at *3-4, but the *Bryant* court found the existing caselaw it reviewed inconsistent. We have focused on the question the *Bryant* court told us to—whether, in context, the activity that resulted in injury was connected to or inherent in performing the job. Taken in that light, substantial evidence supports the Board's finding that Moore's injury arose out of and in the course of his employment.

In Moore's case, the Board correctly applied *Bryant,* noting that the focus of the administrative law judge should not have been on the isolated movement that Moore engaged in when the injury occurred—stepping down or walking. As a part of its finding that Moore's injury arose out of and in the course of his employment, the Board found that the context of Moore's injury was operating a backhoe:

"Even if claimant injured his knee while walking after he stepped of the back-hoe, the Board would find claimant's right knee injury was work related. Respondent is attempting to isolate the act of walking from the remainder of claimant's job duty of operating the backhoe. In order to operate the backhoe, claimant had to walk to the backhoe, climb into the backhoe and operate it. Claimant's job required him to climb out of the backhoe when finished, for breaks, or to perform another work-related activity, etc., and then walk away from the backhoe. The Board views the act of stepping down and walking as part of claimant's single job task of exiting the backhoe."

On appeal, Venture and Travelers also argue briefly that Moore did not have an "accident," another requirement for his claim. For the purposes of a worker's claim, an accident is "an undesigned, sudden and unexpected traumatic event, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force." K.S.A. 2013 Supp. 44-508(d). In addition, under the amended Workers Compensation Act, "the accident" must be "the prevailing factor causing the injury." K.S.A. 2013 Supp. 44-508(f)(2)(B)(ii). On appeal, Venture and Travelers argue that Moore sustained the injury by walking, not stepping off the backhoe, based on the findings of the administrative law judge. Venture and Travelers contend that Judge Fuller implicitly found that Moore, who testified before her that his knee popped when he stepped off the backhoe, was not a credible witness.

While it's true that we must consider any credibility determinations made by the administrative law judge about witnesses who testified in person before her, see K.S.A. 2013 Supp. 77-621(d), only Moore did so. Judge Fuller's conclusion that Moore's injury "arose while he was walking" was explicitly based on the testimony of several witnesses, including medical personnel who reported what Moore had told them and on their own examinations of his knee. The Board was equally capable of reviewing that evidence. Judge Fuller did not make an explicit finding that Moore's testimony was not believable; she simply concluded based on all the evidence in the record that—more likely than not—the injury happened while he was walking. The Board reviewed the same evidence and concluded that Moore "injured his right knee when he stepped off the backhoe."

Substantial evidence supports the Board's conclusion. All of Moore's statements indicated that his pain started within a few steps of the backhoe. Moore told Pratt he had been "walk[ing] around in front of the backhoe" and had been near enough to the backhoe to "grab[ ] hold" of its bucket to prevent him from falling. He later told Judge Fuller that he felt a pop as his foot hit the ground but that it "took two steps for [him] to actually feel all the pain." No evidence indicated that Moore first felt pain or a popping sensation after he had walked a good distance away from the back-

hoe or while he was walking for some non-work-related errand. While Judge Fuller didn't accept Moore's testimony on this point, neither cross-examination nor other evidence in the record so undermined his testimony that it no longer constitutes substantial evidence in support of the Board's factual finding. See *Ribeau*, 50 Kan. App. 2d 824, Syl. ¶ 6; *In re Protests of Oakhill Land Co.*, 46 Kan. App. 2d at 1114.

We should add that the Board correctly ruled that the outcome of the case would have been the same even if it had accepted Judge Fuller's finding that the injury occurred while Moore was walking away from the backhoe. The Board concluded that the acts of stepping down from and walking away from the backhoe were "part of claimant's single job task of exiting the backhoe." Thus, under *Bryant* and this alternative factual scenario, the Board was correct that the injury would still arise out of and in the course of Moore's employment.

In sum, substantial evidence supports the Board's finding that Moore's injury arose out of and in the course of his employment and was not the result of a normal activity of day-to-day living. Moore's injury occurred in the overall context of operating a backhoe, and operating the backhoe was an activity connected to and inherent in the performance of his job. We affirm the Board's decision.