NOT DESIGNATED FOR PUBLICATION

No. 119,337

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

THEODORE CONNOLLY,
*Appellee*,

v

MINSKY'S CITY MARKET and
FREESTONE INSURANCE COMPANY,
*Appellants*.


MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed December 21, 2018. Affirmed.

*Ryan D. Weltz*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellants.

*Timothy E. Power*, of Power Law Group, P.A., of Overland Park, for appellee.


Before ARNOLD-BURGER, C.J., LEBEN and BRUNS, JJ.


LEBEN, J.: Theodore Connolly was savagely beaten—sustaining serious and permanent injuries—as he checked the area around the restaurant he managed before heading home for the night. Whether he's entitled to workers'-compensation benefits depends on whether his injuries arose out of his employment. The Kansas Workers Compensation Appeals Board found they did. His employer, Minsky's City Market, and its insurer have appealed, arguing that the criminal beating of Connolly wasn't tied to his work.

To be compensable, an injury must both "aris[e] out of and in the course of employment." K.S.A. 44-501(a). Minsky's doesn't dispute that Connolly's injuries arose in the course of his employment—he was on the job and doing job duties (checking the restaurant premises before leaving) when he was injured. So the only question is whether his injuries arose out of the employment. We will return to that legal standard after briefly reviewing the facts here.

Connolly was injured in January 2002 while he was working as the general manager of a Minsky's Pizza restaurant in Kansas City, Missouri. The injuries were permanent, and Connolly has spastic quadriplegia.

Although the attack took place in Missouri, both parties agree that Kansas law applies to the issue before us in this appeal. There also are no issues in the appeal related to the length of time between the accident and the underlying workers'-compensation award to Connolly. And because of the date of the accident, neither party argues that the 2011 amendments to the Kansas Workers Compensation Act apply. See *Johnson v. U.S. Food Service*, 56 Kan. App. 2d 232, 250-51, 427 P.3d 996 (2018) (describing new causation standards adopted in 2011), *petition for rev. filed* September 4, 2018.

Connolly oversaw the staff, daily restaurant operations, and the building housing the restaurant. When arriving and when leaving each day, Connolly checked the outside of the restaurant to make sure that the area was clean and outdoor coolers had been secured.

On the day he was attacked, Connolly was preparing to leave work at about 8 p.m. When he went to do his normal check outside, three men attacked him after he had gone only a few steps outside the building.

2

Connolly's own memory of the events is sketchy. Three men who had been customers in the restaurant attacked him on the sidewalk, an area Connolly helped maintain in good shape for the restaurant. Connolly was carrying a briefcase; the attackers took it. Connolly had some paperwork related to his job in the briefcase.

Connolly's car was parked nearby in a city parking lot where Minsky's employees often parked. Because a woman working at Minsky's had had her purse and car stolen from that lot while Connolly was the restaurant manager, he had a policy to make sure waitresses were escorted to their cars when they left work. Connolly said the area around the restaurant wasn't well lit.

Minsky's owner, Paul Meachum, testified that Connolly's job duties required him to be outside the building part of the time. Meachum also agreed that the lighting around the building and the nearby parking lot was inadequate, and that the restaurant and cars near it had been vandalized in the past. Even so, Meachum didn't consider the area around the restaurant a high-crime area.

Based on this evidence, an administrative law judge found that Connolly's injury arose out of his employment. Minsky's appealed to the Workers Compensation Appeals Board. It too concluded that the injury arose out of Connolly's employment. The Board cited Connolly's job duties outside the restaurant in support of its conclusion:

> "Claimant was required to survey the outside property upon entering and leaving the restaurant and check and secure the restaurant's outdoor coolers. It was in the performance of these duties claimant was assaulted. The perpetrators of the assault on claimant stole the briefcase claimant was carrying, which contained some restaurant paperwork and other items. This shows a connection between claimant's work and the assault. The area where the assault occurred was poorly lit. There had been prior crimes committed against employees of [Minsky's] in the area around the business."

"Claimant's duties placed him in a situation where he was at greater risk of robbery and assault than the general public. This is not an unexplained event."

On appeal, Minsky's argues that the connection between Connolly's job and the attack on him is too speculative. Minsky's relies on a Kansas Supreme Court case that denied compensation in an unexplained attack on a man shot while at work on his employer's premises. In that case, *Siebert v. Hoch*, 199 Kan. 299, 307, 428 P.2d 825 (1967), the court said that the connection between the injury (a death in *Siebert*) and the employment "may not rest on mere surmise or conjecture." Minsky's argues that's the case here. Connolly and the Board rely on a different Kansas Supreme Court case, *Hensley v. Carl Graham Glass*, 226 Kan. 256, 597 P.2d 641 (1979), in which the court found the connection between job and injury sufficient to say the injury arose out of the employment.

Before we review those arguments, we should set out the legal rules that guide our review. The Kansas Judicial Review Act governs the review of cases arising under the Workers Compensation Act. K.S.A. 44-556(a). At a hearing before the Workers Compensation Appeals Board, the claimant has the burden of proving his or her right to compensation. *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 137, 343 P.3d 114 (2015). On appeal to this court, the party claiming error has the burden to show it. K.S.A. 77-621(a)(1); *Moore*, 51 Kan. App. 2d at 137.

The only question in this appeal is whether Connolly's injury arose out of his employment. That's a question of fact that the Board decides. See *Atkins v. Webcon*, 308 Kan. 92, 95, 419 P.3d 1 (2018); *Scott v. Hughes*, 294 Kan. 403, 415, 275 P.3d 890 (2012). Our review of questions of fact is limited to whether the Board's factual findings are supported by substantial competent evidence. K.S.A. 2017 Supp. 77-621(c)(7); *Moore*, 51 Kan. App. 2d at 137. Substantial evidence is evidence that a

4

reasonable person would accept as sufficient to support a conclusion. *Buchanan v. JM Staffing*, 52 Kan. App. 2d 943, 948, 379 P.3d 428 (2016).

In determining whether there's enough evidence to support the Board's factual findings, we do not reweigh the evidence or make our own independent review of the facts. We simply determine, after reviewing all the evidence—including both evidence that supports the Board's findings and evidence that detracts from them—whether the evidence supporting the Board's decision has been so undermined by cross-examination or by other evidence that it cannot support the decision. *Moore*, 51 Kan. App. 2d at 137-38. Unless that has happened, we must uphold findings supported by substantial evidence even though evidence in the record would have supported contrary findings. *Poff v. IBP, Inc.*, 33 Kan. App. 2d 700, 706, 106 P.3d 1152 (2005).

The specific factual question here—whether Connolly's injury arose out of his employment—comes down to whether the injury was sufficiently connected to his work. *Atkins v. Webcon*, 308 Kan. 92, 98, 419 P.3d 1 (2018). "'[T]he focus of inquiry should be on whether the activity that results in injury is connected to, or is inherent in, the performance of the job.'" 308 Kan. at 98 (quoting *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 596, 257 P.3d 255 [2011]).

With that overview, let's return to the two cases the parties most rely on, *Siebert* and *Hensley*.

In *Hensley*, the employee, Hensley, was installing glass on the roof of a parking garage when a sniper started firing from a nearby hotel. Hensley was shot and killed; nine others in the area were also shot. The shooter had no connection to Hensley or any of the other victims. The administrative official then tasked with hearing the case, at that time called the workmen's-compensation director, concluded that there was a causal connection between the employment and Hensley's death—that his position doing his job

5

on a rooftop had made him a prime target for the sniper. The district court, which heard the appeal first, agreed, and the Kansas Supreme Court affirmed.

*Siebert* also involved an employee killed while working. Siebert managed the distribution office of a local dairy. Siebert and his wife had worked together in the business, but she separated from him only two days before his death. Siebert was found dead, shot in the head, lying on a couch in his office. A milk truck was loaded and hooked up to refrigeration.

He was found clothed only in shorts, his other clothes hanging on a rack; some women's clothing that he had apparently worn was on the floor at the foot of the couch. There was no sign of forcible entry, his wallet wasn't taken, and the office safe wasn't disturbed. There was also evidence that his brother had recently said that he was angry enough with Siebert to kill him.

The director denied a workers'-compensation award, finding that the death didn't arise out of the employment. But the district court reversed and found that Siebert had been killed by a person intent on burglary and larceny at his workplace. The Kansas Supreme Court held that there wasn't enough evidence to support that conclusion, saying that "the connection of the death with the employment . . . may not rest on mere surmise or conjecture." *Siebert*, 199 Kan. at 307.

Our case is more like *Hensley* than *Siebert*. Like Hensley, evidence supported the conclusion that Connolly was in a place where he was at greater risk of assault than the general public. The danger in the area outside the restaurant was significant enough that Connolly had adopted the practice of having waitresses escorted to their cars, the area wasn't well lit, and there had been vandalism to cars there. Minsky's argues that the evidence didn't show it was a "high-crime area," and that may be true. We don't really know what level of reported crime might be needed to attain that label; that's really just a

matter of definitions. But the evidence here was enough to show that performing Connolly's job duties put him at a greater risk of assault than the general public.

In *Siebert*, by contrast, there was no evidence of any kind connecting his killing with risks associated with performing his job duties. Someone came into his office that day and shot him. As the Kansas Supreme Court held, though, the only way to tie the killing to his job would have been through speculation and conjecture.

Whether an injury arises out of the claimant's employment is a factual question for determination by the Board. Here, the Board determined that Connolly's injuries were connected to his job duties. Substantial evidence supports that conclusion.

We therefore affirm the Board's decision.