NOT DESIGNATED FOR PUBLICATION

No. 119,581

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARY PHILLENE CRAMER,
*Appellant,*

v.

PRESBYTERIAN MANORS and SENTRY CASUALTY CO.,
*Appellees.*

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed September 20, 2019. Affirmed.

*Jan L. Fisher*, of McCullough, Wareheim & LaBunker, of Topeka, for appellant.

*Jeffery R. Brewer*, of Jeffery R. Brewer, P.A., of Wichita, for appellees.

Before LEBEN, P.J., BUSER and STANDRIDGE, JJ.

BUSER, J.:  Mary Phillene Cramer appeals the Kansas Workers Compensation Appeals Board's (Board) order awarding her permanent partial disability benefits for a 7.5% functional impairment and denying her claim for work disability benefits. Cramer contends the Board made two errors. First, she claims the Board erred by denying her compensation for the aggravation of her degenerative disc disease caused by a work accident. Second, Cramer asserts the Board erred when it found that her percentages of functional impairment and wage loss were below the threshold levels required in order to receive work disability benefits.

1

Upon our review we find no reversible error and, therefore, we affirm the Board's rulings.

FACTUAL AND PROCEDURAL BACKGROUND

Cramer, who was born in 1954, began working for Presbyterian Manors in August 2014 as a laundry service assistant. Her employment required loading 50-pound or 30-pound capacity washers. She worked about 33 hours per week earning an average weekly wage of $382.37.

On December 2, 2015, while performing her job duties, Cramer experienced a sudden and excruciating pain in her back. The pain started on the left side of her back and went down her left leg to her ankle. Cramer reported the injury to Presbyterian Manors. Six days later, she sought treatment with her family physician, Dr. Timothy Penner. She also was treated by Dr. John H. Gilbert, an orthopedist. Dr. Gilbert administered three epidural steroid injections which did not relieve Cramer's back pain.

Dr. Douglas Burton, an orthopedic spine surgeon at the University of Kansas Hospital, also evaluated Cramer and became her treating physician. Dr. Burton diagnosed Cramer with a back strain and referred left leg pain, but he did not believe that surgery was appropriate. Instead, Dr. Burton recommended physical therapy. After Dr. Burton concluded that Cramer had reached maximum medical improvement, he referred her for a functional capacity assessment (FCA).

The FCA report determined that Cramer met the material handling demands for a "[l]ight demand vocation." The report stated that Cramer could safely lift 14.34 pounds occasionally and carry up to 12.5 pounds occasionally. Cramer was unable to tolerate sustained standing, walking, kneeling, or full squatting.

Dr. Burton released Cramer from his care in October 2016. At that time, he did not believe that her left leg pain was due to a herniated disc that would cause radiculopathy. Moreover, on M.R.I. Dr. Burton did not observe substantial narrowing around the nerve that would cause radiculopathy. Dr. Burton confirmed that Cramer had degenerative discs in her spine.

Based on the Sixth Edition of the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment, Dr. Burton opined that Cramer had sustained a 2% whole person impairment from her work injury. Dr. Burton also concluded that, if he were to use the Fourth Edition of the AMA Guides, Cramer's condition would qualify for a 5% impairment rating. Dr. Burton clarified that the 2% impairment rating was based on diagnosing Cramer's injury as a "soft tissue injury"—a category that includes strains. The soft tissue injury was superimposed on Cramer's degenerative conditions aggravated by the work injury. But Dr. Burton agreed that degenerative disc disease is not ratable under the Sixth Edition of the AMA Guides.

Dr. Burton recommended work restrictions of a 15 pound limit for occasional lifting and 10 pound limit for frequent lifting. No other work restrictions were recommended. Dr. Burton opined that Cramer was capable of obtaining substantial employment within the work restrictions he imposed.

Cramer provided Presbyterian Manors with Dr. Burton's work restrictions. However, Presbyterian Manors could not provide Cramer with any work that accommodated the restrictions. As a result, Cramer applied for and received Social Security Disability benefits.

Dr. Anne Rosenthal, an orthopedic surgeon, examined Cramer in December 2016 to evaluate her back pain. Dr. Rosenthal specialized in treating hands and upper extremities, but she had diagnosed back injuries. Dr. Rosenthal diagnosed Cramer with

3

an L4-L5 herniated disc and left L5 radiculopathy as a result of her work injury. Dr. Rosenthal also confirmed that Cramer had preexisting multi-level degenerative disc disease affecting other areas of her back. Dr. Rosenthal referred Cramer to Dr. Florin Nicolae, a pain management physician for treatment which ultimately alleviated Cramer's leg pain.

Dr. Rosenthal obtained Cramer's pain management records from Dr. Nicolae. These records showed that Dr. Nicolae treated multiple discs in Cramer's back. Specifically, Cramer received injections at discs located at L1-L2, L3-L4, L4-L5, and L5-S1. Although Dr. Rosenthal opined that the work injury only caused the L4-L5 herniated disc, she explained that Dr. Nicolae provided the other injections to "cure or relieve the effects of the injury." Based on Dr. Nicolae's treatment records, Dr. Rosenthal concluded that Cramer had multiple level radiculopathy. As a result, Dr. Rosenthal rated Cramer at a 25% whole person impairment under the Sixth Edition of the AMA Guides.

Dr. Rosenthal conceded that the work injury was only a prevailing factor in causing the L4-L5 herniated disc. She did not believe the work injury caused permanent damage to other areas of Cramer's spine. In recalculating Cramer's whole person impairment resulting from only the L4-L5 herniated disc injury sustained at work, Dr. Rosenthal opined that Cramer had sustained a 13% whole person impairment.

Dr. Rosenthal found that Dr. Burton's lifting restrictions were appropriate. She also suggested restrictions of occasional walking, standing, bending, kneeling, and squatting. Despite the back injury, Dr. Rosenthal believed that Cramer was capable of working 40 hours per week if an employer accommodated her work restrictions.

Karen Terrill, a vocational rehabilitation consultant retained by Cramer, opined on Cramer's ability to obtain substantial and gainful employment. According to Terrill, Cramer had a high school education. Prior to her employment with Presbyterian Manors,

4

Cramer performed housekeeping duties at a medical center, worked as an advertising assistant, and for 11 years was program director and a classroom teacher for a Head Start program.

Based on Cramer's work history and Dr. Burton's restrictions, Terrill determined that Cramer had lost the ability to perform 12 of 33 work tasks she had performed previously. This resulted in a task loss of 37%.

After reviewing Dr. Burton's work restrictions and the FCA report, Terrill considered Cramer's wage loss. Terrill first noted that "Cramer was not working at the time of the interview; she currently has a 100% loss of wages." As a result, she concluded that no presumption arose that Cramer was capable of earning her actual average post-injury weekly wage. Terrill determined that Cramer was now only able to perform a light level of work with no readily transferable job skills. Terrill concluded: "When considering her age, education, geographical location, and limitations, realistically there are no jobs available to her. She would have no earning capability."

Steve Benjamin, a vocational rehabilitation consultant retained by Presbyterian Manors, also evaluated Cramer's postinjury employability and loss of earnings capability. In his evaluation, Benjamin reviewed medical reports from Dr. Burton, Dr. Nicolae, and Dr. Rosenthal. Benjamin was not provided the FCA report. After considering Cramer's work restrictions, education, employment history, and the labor market, Benjamin determined that Cramer could perform substantial, gainful employment. For example, Benjamin believed that Cramer could work as a customer service representative, a hotel clerk, a general office clerk, or a sales clerk.

Benjamin opined that Cramer could reenter the labor market and earn about $356.30 per week. Comparing this figure to Cramer's preinjury wage, Benjamin found

that Cramer sustained a weekly wage loss of 8.3% after her work injury. Benjamin based his opinion, in part, on Cramer's weight restrictions.

After reviewing the evidence presented during the workers compensation proceedings, the administrative law judge (ALJ) first considered the nature and extent of Cramer's work injury. In particular, the ALJ reviewed the opinions of Cramer's functional impairment made by Dr. Rosenthal and Dr. Burton. In evaluating Dr. Rosenthal's opinion, the ALJ noted that she rated Cramer at a 13% impairment attributable to the work injury. The ALJ explained that Dr. Rosenthal "attempted to rate other levels of the spine, based on Dr. Nicolae's treatment records, but acknowledged those other levels were degenerative in nature and not caused by the work injury." As a result, the ALJ adopted Dr. Burton's opinion and found that Cramer suffered a 2% whole body impairment from the work injury.

The ALJ next determined that Cramer was ineligible for permanent partial general disability compensation beyond her functional impairment because her 2% whole body impairment rating was statutorily insufficient to qualify. Relying on Benjamin's conclusions, the ALJ also found that Cramer did not sustain a wage loss of at least 10% to qualify for permanent partial disability compensation. Ultimately, the ALJ awarded $12,196.89 for Cramer's 2% whole body impairment rating.

Cramer appealed the ALJ's decision to the Board. First, Cramer asserted the Board should consider Dr. Rosenthal's opinion that Cramer sustained a 25% whole body impairment. According to Cramer: "The rating of 25% is correct in that it considers not only the herniated disc at L4-5—where the prevailing factor is the work accident—but also other levels of the lumbar spine which were aggravated by the work accident." Second, Cramer argued the Board should not rely on Benjamin's opinion because he only considered Dr. Burton's weight restrictions and no other limitations identified in the FCA report.

6

Upon its review, the Board modified the ALJ's ruling, increasing Cramer's whole person functional impairment award to 7.5%, but it otherwise affirmed the ALJ's rulings. When considering Cramer's functional impairment rating, the Board examined both Dr. Burton's and Dr. Rosenthal's expert opinions. The Board found neither opinion overly persuasive. As a result, the Board averaged both opinions and found that Cramer suffered a 7.5% whole body impairment.

Because the Board determined that Cramer suffered a 7.5% impairment rating, it concluded that she was limited to her functional impairment and did not qualify for work disability benefits. The Board concluded: "Even if the Board were to assess a higher functional impairment, claimant would not qualify for a work disability as Mr. Benjamin found claimant had the ability to earn at least 90 percent of her pre-injury average weekly wage." The Board increased Cramer's award to $17,520.85 for her 7.5% impairment rating.

Cramer appeals.

## THE AWARD OF PERMANENT PARTIAL DISABILITY FOR A LUMBAR STRAIN/HERNIATED DISC

Cramer first contends the Board erred as a matter of law when awarding permanent partial disability by considering "only those component parts of an overall injury that individually meet the prevailing factor standard of causation." Cramer argues she "is entitled to an [a]ward based on all impairments that result—or flow—from the accidental injury," including her aggravated degenerative disc disease which is separate from the lumbar strain/herniated disc injury. For its part, Presbyterian Manors responds that Cramer raises "no viable issue as to any 'prevailing factor' determination by the Board."

7

We begin with a brief summary of our standards of review and relevant Kansas law. Our court reviews decisions by the Board under the Kansas Judicial Review Act (KJRA). K.S.A. 2018 Supp. 44-556(a). The standard of review varies depending on the issue raised. See K.S.A. 2018 Supp. 77-621 (defining and limiting the scope of review of administrative decisions under KJRA). In the proceedings below, the claimant has the burden of proving a right to compensation under the Workers Compensation Act. *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 137, 343 P.3d 114 (2015). On appeal to our court, the party claiming error has the burden to show it. See K.S.A. 2018 Supp. 77-621(a)(1).

When reviewing whether the Board erroneously applied the law to undisputed facts, we exercise de novo review. *Nuessen v. Sutherlands*, 51 Kan. App. 2d 616, 618, 352 P.3d 587 (2015). Additionally, appellate courts exercise unlimited review of questions involving the interpretation or construction of a statute, owing no deference to the agency's or the Board's interpretation or construction. *Fernandez v. McDonald's*, 296 Kan. 472, 475, 292 P.3d 311 (2013); *Le v. Armour Eckrich Meats*, 52 Kan. App. 2d 189, 193, 364 P.3d 571 (2015).

The most fundamental rule of statutory construction is to give effect to the intent of the Legislature. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). Our court first attempts to determine legislative intent by looking to the words of the statute, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). Our Supreme Court has instructed:

> "When a workers compensation statute is plain and unambiguous, this court must give effect to its express language rather than determine what the law should or should not be. The court will not speculate on legislative intent and will not read the statute to add something not readily found in it." *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607-08, 214 P.3d 676 (2009).

8

In this case, the parties agreed that Cramer sustained an injury by accident on December 2, 2015, but they dispute the severity of that injury. Dr. Burton opined that Cramer sustained a lumbar strain from the work accident, while Dr. Rosenthal believed the accident caused a herniated disc at the L4-L5 level of Cramer's spine. Both Dr. Burton and Dr. Rosenthal agreed, however, that Cramer had degenerative disc disease which preexisted the work accident.

A brief survey of pertinent workers compensation law is in order. Under Kansas' Workers Compensation Act (the Act), an injury is defined as "any lesion or change in the physical structure of the body, causing damage or harm thereto." K.S.A. 2018 Supp. 44-508(f). "An injury is not compensable solely because it aggravates, accelerates or exacerbates a preexisting condition or renders a preexisting condition symptomatic." K.S.A. 2018 Supp. 44-508(f)(2). But accidental injuries that result in new physical findings, or changes in the physical structure of the body, are compensable despite the claimant also aggravating a preexisting condition. *Le*, 52 Kan. App. 2d 189, Syl. ¶ 5.

An employee's injury is "compensable only if it arises out of and in the course of employment." K.S.A. 2018 Supp. 44-508(f)(2). An injury by accident arises out of employment only if the work accident is the "prevailing factor causing the injury, medical condition, and resulting disability or impairment." K.S.A. 2018 Supp. 44-508(f)(2)(B)(ii). The prevailing factor is the "primary factor, in relation to any other factor." K.S.A. 2018 Supp. 44-508(g). Accordingly, an injury is recoverable only if the work accident—and not the preexisting condition—is the primary factor in causing the injury and resulting impairment. K.S.A. 2018 Supp. 44-508(d) ("The accident must be the prevailing factor in causing the injury."); *Buchanan v. JM Staffing*, 52 Kan. App. 2d 943, 949, 379 P.3d 428 (2016).

Cramer had experienced brief episodes of lower back pain before the work accident. Dr. Burton believed that as a result of the accident, Cramer sustained a lumbar

9

strain superimposed on her preexisting degenerative disc disease. But Dr. Burton could not say whether any aggravation of Cramer's degenerative disc disease resulted in a structural change to her body. For her part, Dr. Rosenthal determined the work injury was the prevailing factor in causing Cramer's herniated disc at the L4-L5 level. She testified that the work injury did not cause permanent damage to the other discs in Cramer's spine. However, Dr. Rosenthal explained that treatment was needed at the other disc levels to relieve the effects of the L4-L5 herniated disc, which she described as the "initial injury."

Cramer's aggravated degenerative disc disease apart from her lumbar strain/herniated disc is not compensable under the Act. The evidence shows the work accident was not the primary factor in causing Cramer's aggravated degenerative disc disease apart from the new physical findings. Because the work accident was not the prevailing factor in causing any injury or impairment from this aggravation, the aggravation of Cramer's degenerative disc disease is not compensable.

Cramer asserts the impairment from her aggravated disc disease should have been considered in awarding permanent partial disability even though the accident was not the prevailing factor in causing this aggravation. Cramer relies on the language in K.S.A. 2018 Supp. 44-510e(a)(2)(B) to argue that "all impairment that flows from the injury should be awarded."

At the outset, it is undisputed that Cramer's lumbar strain/herniated disc is a compensable injury caused by an accident that arose out of her employment. The accident was the prevailing factor in causing the lumbar strain/herniated disc and this injury was a change in the physical structure of her body. Accordingly, Cramer was entitled to some compensation.

The Act calculates compensation differently depending on the nature of the claimant's disability. Claimants suffering from a permanent total disability are treated

10

differently under the Act from those who have a permanent partial disability. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 522, 154 P.3d 494 (2007). And claimants, like Cramer, who sustain an injury that is not included in the schedule of disabilities are eligible to receive a "permanent partial general disability" award calculated in accordance with K.S.A. 44-510e. K.S.A. 2018 Supp. 44-510e(a).

To recover permanent partial general disability, a claimant must prove that he or she is "disabled in a manner which is partial in character and permanent in quality." K.S.A. 2018 Supp. 44-510e(a)(2)(A). Under K.S.A. 2018 Supp. 44-510e(a)(2)(B), the extent of permanent partial general disability is the "percentage of functional impairment the employee sustained on account of the injury." Relying on this language, Cramer argues: "As long as the accidental injury resulted in the primary reason or primary factor leading to the impairment or disability, compensability is shown. Thereafter, all impairments or disabilities which are 'on account of the injury' are considered under K.S.A. 44-510e."

Kansas law recognizes that injured employees are entitled to "compensation for all of the natural consequences arising out of an injury, including any new and distinct injuries that are the direct and natural result of the primary injury." 283 Kan. at 515. This is known as the secondary-injury rule. When expert medical testimony links the causation of the second injury to the primary injury, the second injury is considered compensable as the natural and probable consequence of the primary injury. 283 Kan. at 516. But "all injuries, including secondary injuries, must be caused primarily by the work accident." *Buchanan*, 52 Kan. App. 2d at 951.

Cramer's reliance on K.S.A. 2018 Supp. 44-510e(a)(2)(B) is misplaced. First, to be compensable, the natural and probable consequences that arise or flow from the injury must still be caused primarily by the work accident. While Dr. Rosenthal suggested that Cramer's aggravated degenerative disc disease arose from the L4-L5 herniated disc, she

11

also found this secondary injury was not caused primarily by the work accident. As a result, the aggravated degenerative disc disease was not compensable as an impairment flowing from the lumbar strain/herniated disc. Next, recovery for permanent partial general disability is limited to disabilities which are permanent in quality. But other than the L4-L5 herniated disc, Dr. Rosenthal believed the work injury caused no permanent damage to Cramer's spine.

Finally, in the 2011 amendments to the Act, which added the prevailing factor test and eliminated compensation for an injury that solely aggravates a preexisting condition, the Legislature also amended K.S.A. 44-501. L. 2011 ch. 55, § 3. Before the 2011 amendments, K.S.A. 2010 Supp. 44-501(c) explained that an employee may recover for aggravated preexisting conditions "to the extent that the work-related injury causes increased disability." The 2011 amendments eliminated this language, however, and now provide only that an award for permanent partial impairment must be reduced by the amount of functional impairment found to be preexisting. K.S.A. 2018 Supp. 44-501(e). These revisions support the view that the Legislature intended to limit recovery for aggravated preexisting conditions to those primarily caused by the work accident.

Cramer next asserts the reasoning in *Le* suggests that any disability or impairment from an aggravated preexisting condition is recoverable if it results from an injury that is not solely an aggravation of a preexisting condition. In essence, Cramer argues that the entirety of her chronic pain is recoverable if it results from both the new injury and any aggravated preexisting condition. We disagree with Cramer's reading of *Le*.

In *Le*, the claimant—who had preexisting, asymptomatic osteoporosis—fell at work and sustained a vertebral fracture. After the fracture healed, Le continued to suffer pain that prevented her return to work. Two of three doctors testified that Le's debilitating pain was caused by the fracture and not preexisting osteoporosis. The third doctor—Dr. Ciccarelli—opined that Le was unable to work because of preexisting osteoporosis,

12

unrelated to the fracture. Dr. Ciccarelli opined that Le sustained a 20% functional impairment with 5% from her osteoporosis thus, leaving her with a 15% permanent partial impairment rating. 52 Kan. App. 2d at 192. But the ALJ discounted this opinion and determined that Le was permanently and totally disabled.

The Board adopted Dr. Ciccarelli's opinion, however, and ruled that Le suffered a 15% permanent partial impairment. The Board found that Le's inability to return to work was caused by preexisting osteoporosis and not the fracture. 52 Kan. App. 2d at 193. Le appealed to our court.

In *Le*, we held that Dr. Ciccarelli's testimony did not provide substantial evidence to support the Board's decision that Le's chronic pain, which kept her from working, was due to preexisting osteoporosis and not the fracture. 52 Kan. App. 2d at 200. In reaching this conclusion, our court noted that Le suffered chronic pain only after the work accident and resulting fracture. Our court found: "When viewing the record as a whole, the evidence undermines Dr. Ciccarelli's conclusion that Le's ongoing pain which prevents her from working is attributed solely to her preexisting osteoporosis and is not a consequence of the injury she sustained at work." 52 Kan. App. 2d at 200. As a result, our court reversed and reinstated the ALJ's finding that Le was permanently and totally disabled. 52 Kan. App. 2d at 200.

Contrary to Cramer's argument, the *Le* opinion does not require compensation for aggravated preexisting conditions not primarily caused by a work accident when a new injury is present. Instead, the *Le* court found that the evidence undermined Dr. Ciccarelli's testimony that Le was disabled solely by her aggravated osteoporosis. The remaining testimony suggested Le was permanently and totally disabled because her work-related fracture caused the entirety of her debilitating pain. Importantly, no evidence in *Le* suggested that her impairing pain was caused by a combination of the fracture and aggravated osteoporosis.

13

Unlike *Le*, on appeal Cramer does not argue that substantial evidence failed to support the Board's decision. And this case does not involve competing expert opinions suggesting that one of two afflictions—either the new injury or aggravated preexisting condition—caused the entirety of the claimant's impairment. Instead, no evidence shows that the work accident was the prevailing factor in causing Cramer's impairment from her aggravated degenerative disc disease. *Le* does not support Cramer's legal argument.

Additionally, Cramer's argument conflicts with K.S.A. 2018 Supp. 44-508(f). An injury is recoverable only if the work accident is the primary factor in causing the injury and resulting disability or impairment. K.S.A. 2018 Supp. 44-508(f)(2)(B)(ii). And an injury is statutorily restricted to a lesion or change in the body's physical structure. Here, the only recoverable injury is Cramer's lumbar strain/herniated disc. While this injury may have also caused pain by aggravating the preexisting disc disease in other areas of Cramer's spine, the work accident was not the primary factor in causing that resulting impairment. As a result, any impairment from Cramer's aggravated degenerative disc disease separate from her lumbar strain/herniated disc is not recoverable.

Finally, Cramer cites to the Missouri Court of Appeals decision in *Tillotson v. St. Joseph Medical Center*, 347 S.W.3d 511 (Mo. Ct. App. 2011) to support her argument that she is entitled to compensation for all impairments that flow from the work accident including the aggravated degenerative disc disease.

At the outset, the workers compensation laws of Kansas and Missouri are not identical and, as a result, provide minimal precedent. Moreover, *Tillotson* does not support Cramer's argument. The *Tillotson* court observed that the case highlighted the "material distinction between determining whether a compensable injury has occurred and determining the medical treatment required to be provided to treat a compensable injury." 347 S.W.3d at 517. Unlike *Tillotson*, the issue here does not require determining the medical treatment needed to treat a compensable injury. Rather, this appeal involves

14

whether Cramer's aggravated degenerative disc disease is compensable as a permanent partial general disability. As a result, Cramer needed to prove the work accident was the prevailing factor in causing any impairment from her aggravated degenerative disc disease for that disability to be compensable.

Because Cramer's work accident was not the prevailing factor in causing an injury or resulting impairment from her aggravated degenerative disc disease, it is not compensable. We hold the Board did not err in limiting Cramer's permanent partial disability award to her lumbar strain/herniated disc.

DENIAL OF WORK DISABILITY BENEFITS

Cramer next contends the Board erred as a matter of law when determining that she was not entitled to compensation for work disability benefits beyond her functional impairment. Cramer's argument is two-fold. First, Cramer claims the Board failed to consider whether her overall functional impairment—including any preexisting impairment—was at least 10%. Second, Cramer alleges the Board erred when determining her capability to earn postinjury wages because it failed to consider her true physical capabilities.

Our court exercises de novo review when considering whether the Board erroneously applied the law to undisputed facts. *Nuessen*, 51 Kan. App. 2d at 618. And appellate courts exercise unlimited review over questions involving the interpretation or construction of a statute, owing no deference to the agency's or the Board's interpretation or construction. *Fernandez*, 296 Kan. at 475.

As previously discussed, K.S.A. 2018 Supp. 44-510e sets out the compensation available for permanent partial general disabilities when a claimant sustains nonscheduled injuries. An award for work disability benefits beyond a claimant's

15

functional impairment is available only if the claimant meets certain requirements. In particular, K.S.A. 2018 Supp. 44-510e(a)(2)(C) provides:

> "An employee may be eligible to receive permanent partial general disability compensation in excess of the percentage of functional impairment ('work disability') if:
> (i) The percentage of functional impairment determined to be caused solely by the injury exceeds 7 1/2% to the body as a whole or the overall functional impairment is equal to or exceeds 10% to the body as a whole in cases where there is preexisting functional impairment; and
> (ii) the employee sustained a post-injury wage loss, as defined in subsection (a)(2)(E) of K.S.A. 44-510e, and amendments thereto, of at least 10% which is directly attributable to the work injury and not to other causes or factors."

In short, to obtain work disability benefits, the claimant must first meet the impairment threshold by establishing either (1) a functional impairment rating from the current injury of more than 7.5% to the body as a whole *or* (2) an overall functional impairment rating of at least 10% if there is preexisting functional impairment. Second, the claimant must additionally establish a wage loss of at least 10%.

Cramer asserts the Board erred when it found that she did not meet the threshold levels for either functional impairment or wage loss which are necessary in order to obtain work disability benefits under K.S.A. 2018 Supp. 44-510e(a)(2)(C)(i)-(ii). We will first consider the functional impairment threshold level.

The Board determined that Cramer suffered a 7.5% functional impairment to the body as a whole from the injuries sustained on December 2, 2015. This percentage was based on the impairment from Cramer's lumbar strain/herniated disc. The Board found that "[u]nder K.S.A. 2015 Supp. 44-510e(a)(2)(C)(i), claimant is limited to her functional impairment with no permanent partial general disability."

16

With the previous issue on appeal adversely determined against her, Cramer concedes that her functional impairment rating from the current injury did not exceed 7.5%. But Cramer asserts the Board erred when it considered whether her overall functional impairment was at least 10% because the Board never factored in her aggravated degenerative disc disease. Cramer argues that the Board should have considered the aggravation as a preexisting impairment.

A claimant satisfies the impairment threshold to obtain work disability if the percentage of the "overall functional impairment is equal to or exceeds 10% to the body as a whole in cases where there is preexisting functional impairment." K.S.A. 2018 Supp. 44-510e(a)(2)(C)(i). However, as Cramer recognizes, this 10% overall functional impairment threshold may not apply because she potentially did not have a preexisting functional impairment.

Important to the resolution of this issue, Kansas law distinguishes between a preexisting *condition* and a preexisting *functional impairment*. A functional impairment is "the loss of a portion of the total physiological capabilities of the human body." K.S.A. 2018 Supp. 44-508(u). A claimant may have a preexisting condition with no preexisting functional impairment. As our court has explained:  "A person with preexisting asymptomatic arthritis is not impaired; he or she simply has a preexisting condition. While a person with preexisting symptomatic arthritis (e.g., pain, limited mobility) is impaired." *Franzel v. State*, No. 106,193, 2012 WL 603301, at *8 (Kan. App. 2012) (unpublished opinion).

Cramer had preexisting degenerative disc disease prior to the work accident. But, other than a few occasionally brief periods of back pain, there was no evidence that she exhibited impairment of function from this preexisting condition. As acknowledged by Cramer on appeal, "[t]here is no evidence that this was an impairing condition before the work accident."

We are persuaded the evidence shows that Cramer's preexisting condition did not constitute a preexisting functional impairment. Given that Cramer's functional impairment rating from the current injury was not more than 7.5% and the overall functional impairment rating of 10% was not applicable because Cramer did not have a preexisting functional impairment, the first requirement of K.S.A. 2018 Supp. 44-510e(a)(2)(C)(i) was not satisfied. As a result, the Board did not err in denying Cramer work disability benefits.

Having found that Cramer failed to satisfy the impairment threshold for work disability benefits, a resolution of whether the Board erred when determining Cramer's capability to earn postinjury wages would have no legal impact on Cramer. Even if Cramer's position is correct, this court cannot provide her with any meaningful relief because she is precluded from receiving work disability benefits under K.S.A. 2018 Supp. 44-510e(a)(2)(C)(i) despite whether she satisfied K.S.A. 2018 Supp. 44-510e(a)(2)(C)(ii). As a result, this issue is moot. *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 (2012) (A controversy becomes moot when judicial resolution of an issue presented would no longer affect the legal rights or alter the legal relationship of the parties.).

Affirmed.

18